**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 10 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

IVAN LYNN KIMBER,

     Plaintiff - Appellant,

vs.

THIOKOL CORPORATION;
THIOKOL CORPORATION
DISABILITY BENEFITS PLAN,

     Defendants - Appellees.

---

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Amicus Curiae.

No. 98-4106

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 97-CV-41-C)**

---

Brian S. King (Richard R. Burke with him on the briefs), King & Isaacson, P.C., Salt Lake City, Utah, for Plaintiff-Appellant.

Mary Anne Q. Wood (Kathryn O. Balmforth with her on the brief), Wood Crapo, L.L.C., Salt Lake City, Utah, for Defendants-Appellees.

Lisa J. Banks (C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, on the brief), Office of General Counsel, Equal Employment Opportunity Commission, Washington, D.C., for amicus curiae.

Before **TACHA** and **KELLY**, Circuit Judges, and **WEST**[*], District Judge.

_____

**KELLY**, Circuit Judge.

_____

Plaintiff-Appellant Ivan Lynn Kimber appeals from the entry of summary judgment in favor of Defendants-Appellees Thiokol Corporation ("Thiokol") and the Thiokol Corporation Disability Benefits Plan ("Plan") on a claim for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12213. Mr. Kimber first argues that Thiokol acted arbitrarily and capriciously by limiting his long term disability benefits to two years pursuant to a plan provision capping benefits for disabilities "due to a mental condition." Second, Mr. Kimber argues that the Plan violates the ADA by establishing different levels of benefits for disabilities caused by physical or mental conditions. Jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

## Background

Thiokol Corp. provides disability benefits for its employees under the

---

[*]Honorable Lee R. West, Senior District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

Thiokol Corporation Disability Benefits Plan. The Plan is managed and self-funded by Thiokol and is subject to the requirements of ERISA. A Thiokol employee, Mr. Evan Schelin, functions as the plan administrator. John Hancock Managed Care Group ("John Hancock") was retained in 1994 to review disability claims.

In order to trigger disability benefits, a Plan participant must prove that he suffers from a "total disability." Admission to a hospital or confinement by a physician to medically necessary home confinement for at least five days is proof of a total disability. Aplt. App. at 11. After this initial burden is met, a plan participant must prove the continuing nature of the total disability.

> [D]uring the first 18 months of the period of disability there must be satisfactory medical evidence that you continue to be physically or mentally incapable of either:
> *     carrying out the normal duties of your own occupation, or
> *     performing any part-time or light duty assignment where your pay would be equal to or greater than your disability benefits.

Aplt. App. at 12. Benefits continue until the occurrence of one of several events listed in the Plan, such as overcoming total disability, failure to provide medical evidence of disability, death, or turning 65 years old. The Plan also contains a further limitation relating solely to mental health conditions.

> Disability Benefits will end after 24 months of benefits if it is determined that the disability, at that time is due to a mental condition described in the most current edition of

the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association.

Aplt. App. at 17.

Mr. Kimber began employment with Thiokol around 1970 as a heavy equipment operator. Throughout the course of his employment, Mr. Kimber suffered from insulin dependent diabetes. In 1981, he developed diabetic retinopathy and lost complete vision in his right eye. Pursuant to company policy prohibiting persons with single eye vision from operating heavy equipment, he was transferred to a different position. In 1991, he was transferred to the position of senior materials clerk, a desk job.

From 1991 to 1994, Mr. Kimber's diabetic symptoms worsened. His blood pressure increased significantly; his kidneys functioned at only thirty percent; and vascular disease spread to his feet. On several occasions, paramedics were summoned after Mr. Kimber experienced insulin shock. Finally, on May 9, 1994, Mr. Kimber's personal doctor, Dr. N. Brent Williams, recommended a medical leave of absence to control the diabetes. Upon this advice, Mr. Kimber took medical leave beginning May 18, 1994 and applied for long term disability benefits under the Thiokol Plan.

Although Mr. Kimber had not been admitted to a hospital or confined at home, he was granted temporary disability benefits effective May 18, 1994 as part of Thiokol's medical leave program. Aplee. App. at 26. The benefits were

originally scheduled to terminate on July 3, 1994, but Thiokol extended them through October 31, 1994. Subsequent payments were to be reviewed by John Hancock for proof of continuing total disability. In an October 19, 1994 letter, John Hancock informed Kimber that his disability claim "has been reviewed and is approved indefinately [sic]. We will continue to update your file and if this status changes, you will be notified." Aplt. App. at 70.

Upon further review, John Hancock determined that Mr. Kimber had not adequately demonstrated "medical evidence of your total disability" as required by the Plan. John Hancock requested "objective functional impairment information to support continued total disability" from Dr. Williams on September 21, 1995. Aplee. App. at 43. When no additional information was received, John Hancock wrote directly to Mr. Kimber on November 16 informing him that benefits would be suspended as of December 1, 1995 if further evidence were not presented. Disability benefits were officially terminated in a December 4, 1995 letter to Mr. Kimber. "The information furnished by Dr. Williams does not support your total disability from your sedentary job as a Property Clerk." Aplee. App. at 46.

Mr. Kimber appealed the termination decision and offered the opinions of three physicians relating to his disability: Dr. Williams, a psychologist, and an eye specialist. Aplt. App. at 90, 92-95. In particular, the psychologist opined that

Mr. Kimber was "suffering from symptoms of depression and perhaps even mild dementia secondary to his diabetes." Id. at 94.

Based on these new reports detailing possible mental disorders, John Hancock decided that further review of the medical evidence was necessary. It arranged for Mr. Kimber to undergo a psychological evaluation to determine the extent of his mental conditions. In an April 25, 1996 report entitled "Outpatient Psychological Evaluation," psychologist Dr. Walsh reported that Mr. Kimber was suffering from mild dementia "due to other general medical conditions," a recurrent major depressive episode, and anxiety disorder. Aplt. App. at 83. She recommended that Mr. Kimber be reconsidered for disability benefits "as [his] current medical condition and related effects of cognitive functioning seem to impair ability to work productively, efficiently, and safely." Id. at 84.

John Hancock reviewed the evaluation and concluded:

> ASSESSMENT: We now have objective evidence of significant impairment and progressive disease that is reasonably disabling, especially in the context of the multiple medical residuals which were not, by themselves totally disabling. This is new clinical evidence and supports [total disability any occupation] on permanent basis [].
> Will RECOMMEND to the Plan Administrator that the DENIAL BE OVERTURNED AND [employee] be medically authorized for a year from this date and then annual reviews after that.

Aplee. App. at 106. Upon this recommendation, the plan administrator found that

- 6 -

Mr. Kimber was totally disabled "due, at least in significant part to a mental condition." In a May 20, 1996 letter reviewed by John Hancock, the administrator reinstated Mr. Kimber's benefits, subject to the Plan's 24 month mental conditions cap. The effect of this reinstatement was to provide Mr. Kimber with the past benefits he had lost from December 1, 1995 through May 17, 1996, but no future benefits. Aplt. App. at 85. After further discussion with Thiokol proved unsuccessful, Mr. Kimber brought suit in district court claiming that he should receive full benefits for physical disability based solely on his diabetes. The district court granted Thiokol's motion for summary judgment and Mr. Kimber appeals.

Discussion

Review of a grant of summary judgment is de novo, applying the same legal standard used by the district court. See Charter Canyon Treatment Ctr. v. Pool Co., 153 F.3d 1132, 1135 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Jones v. Kodak Med. Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. 1999).

"A court reviewing a challenge to a denial of employee benefits under 29 U.S.C. § 1132(a)(1)(B) applies an 'arbitrary and capricious' standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms." Charter Canyon, 153 F.3d at 1135 (citing to Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). The parties agree that the plan administrator had discretion to determine eligibility and that an arbitrary and capricious review is the proper standard. However, Mr. Kimber argues that the plan administrator was operating under a conflict of interest and, therefore, the court should grant less deference to his decision. See Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 (10th Cir. 1996) (noting that a conflict of interest "triggers a less deferential standard of review.").

A conflict of interest can arise between a plan administrator's duty to act "solely in the interest of the participants and beneficiaries" of the plan, 29 U.S.C. § 1104(a)(1), and his self interest or loyalty to his employer. In Firestone, the Supreme Court noted that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 115 (citation omitted). The standard always remains arbitrary and capricious but the amount of deference present may decrease "on a

sliding scale in proportion to the extent of conflict present, recognizing the arbitrary and capricious standard is inherently flexible." McGraw v. Prudential Ins. Co., 137 F.3d 1253, 1258 (10th Cir. 1998) (citing Chambers, 100 F.3d at 826-27).

However, before applying the sliding scale, there must first be evidence of a conflict of interest, i.e. proof "that the plan administrator's dual role jeopardized his impartiality." Kodak, 169 F.3d at 1291. Mr. Kimber advances three claims in support of a conflict of interest. First, Thiokol both funds and administers the Plan, keeping every dollar not paid out in disability benefits. Second, deference is decreased when a plan administrator fails to gather or examine relevant evidence. See McGraw, 137 F.3d at 1262-63. Third, a plan's inconsistencies in handling an applicant's claims will also decrease deference. While the second and third claims are arguably accurate statements of the law, Mr. Kimber simply has not shown that they apply to the facts before us and there is no need to address them.

As for the first claim, the mere fact that the plan administrator was a Thiokol employee is not enough per se to demonstrate a conflict. See Kodak, 169 F.3d at 1291; see also Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1459 (10th Cir. 1991). Rather, a court should consider various factors including whether:

(1) the plan is self-funded; (2) the company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to the denial of the benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan.

Id. Here the first two factors are present. However, the plan administrator is a salaried employee, owns no stock in Thiokol and is not a corporate officer. Aplee. App. at 12. He has absolutely no direct pecuniary interest in the outcome of benefit claims. Moreover, the Plan does not have a significant economic impact on Thiokol's existence. Although there is no per se rule of significant economic impact, we note that long term disability costs amounted to a mere .3% of Thiokol's operating expenses during 1997. Aplee. App. at 96. After considering these factors, we find that there is insufficient evidence of a conflict of interest and review with deference is appropriate.

When reviewing under the arbitrary and capricious standard, "[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary or capricious." Woolsey, 934 F.2d at 1460. The decision will be upheld unless it is "not grounded on any reasonable basis." Id. (citation omitted). The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness--even if on the low end." Vega v. National Life Ins. Serv., Inc., 188 F.3d 287, 297 (5th Cir. 1999).

- 10 -

Given that standard of review and how the evidentiary support for Mr. Kimber's claim developed, we must affirm.

A.      Application of the Mental Condition Cap

"[I]n reviewing decisions of plan administrators under the arbitrary and capricious standard, the reviewing court may consider only the evidence that the administrators themselves considered" on or before the final decision denying benefits.  Chambers , 100 F.3d at 823, 824.   See also  Sandoval v. Aetna Life & Casualty Ins. Co  , 967 F.3d 377, 380-81 (10th Cir. 1992);    Woolsey , 934 F.2d at 1460.  Mr. Kimber appealed from the letter denying his benefits on May 20, 1996 and the plan administrator issued a final decision denying reinstatement for physical disability on August 13, 1996.  Aplee. App. at 80-81.  Thus, our review is limited to evidence presented to Thiokol before August 13, 1996.

Mr. Kimber raises several issues to prove that the plan administrator's decision was arbitrary and capricious.  First, Mr. Kimber argues that Thiokol has disavowed its October 1994 approval of his disability claim for an indefinite period based upon diabetes.  Of course, this fact must be considered against a backdrop of the Plan's terms and the facts before the plan administrator.  A one-time determination of eligibility for benefits under the Plan does not foreclose subsequent principled review.  The Plan itself contemplated the ongoing review of

all disability claims, see Aplt. App. at 12, 13 (requiring "satisfactory medical evidence that you continue to be [disabled]" and terminating benefits on "the date you are not totally disabled.") (emphasis added), and John Hancock's letter in which Mr. Kimber was granted benefits indefinitely also specifically noted the possibility of a change in disability status. Aplt. App. at 70. ("We will continue to update your file and if this status changes, you will be notified.").

Our decision in Sandoval is instructive on this issue. Sandoval had applied for and received long-term disability benefits beginning in 1977. Eleven years later as part of a routine review of claims, the plan administrator decided there was insufficient evidence to support a claim of total disability. 967 F.2d at 378. The administrator "requested additional information from [Sandoval], and scheduled an independent medical evaluation." Id. Based on the resulting information, the administrator found that there was no total disability and terminated benefits. Id. at 380. Given our narrow standard of review, we upheld the administrator's decision even though the evidence conflicted on disability.

In arriving at the decision in this case, John Hancock reviewed Mr. Kimber's claim as part of a periodic review, determined that there was insufficient evidence of total disability in the file, and requested additional medical evidence. Aplee. App. at 43. After reviewing this evidence, John Hancock determined that Mr. Kimber was not totally disabled from performing

his job as a Property Clerk and terminated his benefits.     Id. at 46.  Regardless of its initial determination, Thiokol had the right to review Mr. Kimber's file and request additional evidence of a continuing total disability.  To do so was not arbitrary and capricious.

Second, Mr. Kimber argues that Thiokol acted arbitrarily by finding that there was a lack of objective evidence of total disability based upon diabetes.  He points to a letter and two reports by Dr. Williams to support his claim.  See Aplt. App. at 67, 69A & 69C.  A rational plan administrator could find these documents insufficient because they do not contain supporting data for the conclusions reached; for example, the letter from Dr. Williams merely states that Mr. Kimber is "totally disabled secondary to diabetes, hypertension and the problems associated with this," but does not include any reference to clinical data.  See id. at 69.

Mr. Kimber also relies upon John Hancock's evaluation during the appeals process that his condition had worsened.  See id. at 108.  The reviewer, however, expressly noted that more information was yet to come, including that pertaining to psychological condition.  See id.  When the neuropsychological information was furnished, the overall assessment of permanent disability was based upon a combination of physical and psychological factors.  See id. at 109.  Although we might have come to a different conclusion, the plan administrator acted within his

discretion in attributing the disability to Mr. Kimber's mental condition.

Third, Mr. Kimber asserts that the plan administrator failed to look at all the relevant medical records before terminating benefits. Specifically, he points to the twelve page neuropsychological evaluation report by Dr. Walsh which the administrator did not read. Aplt. App. at 73. However, such a description is misleading. The Plan specifically permits the administrator to "employ one or more persons to render advice with regard to any responsibility [the administrator] has under the Plan." Id. at 5. Mr. Schelin employed John Hancock to review medical records and provide a professional opinion as to their contents. Schelin gave the lengthy, detailed neuropsychological report to John Hancock, had them review it, and relied upon their analysis of the report in making his final decision. Mr. Schelin was not a medical professional and had no duty to read every single piece of raw medical data. His reliance upon John Hancock's analysis and summary of the report was both reasonable and sufficient.

Fourth, Mr. Kimber argues that the plan administrator rejected John Hancock's recommendation to reinstate benefits. A review of the record reveals however that Mr. Kimber's benefits were, in fact, reinstated, although not based upon physical condition. After the John Hancock medical personnel had reviewed the neuropsychological report detailing Mr. Kimber's mental conditions, they recommended that benefits be reinstated since there now was "objective evidence

of significant impairment and progressive disease that is reasonably disabling, especially in the context of the multiple medical residuals <u>which were not, by themselves, totally disabling</u>." Aplee. App. at 106 (emphasis added). Based on the new evidence of mental conditions and John Hancock's recommendation, the plan administrator drafted a letter reinstating Mr. Kimber's disability benefits, subject to the mental condition cap, and sent it back to John Hancock for comments. The reviewing doctors made some slight grammatical corrections, sent it back to the administrator, who mailed it to Mr. Kimber. It is overstatement to claim that the John Hancock medical personnel recommended disability based upon physical impairment.

Fifth, Mr. Kimber argues that the administrator acted arbitrarily by interpreting the phrase "due to" to mean "due, at least in significant part, to." Mr. Kimber claims that "due to" requires that the mental condition be the sole cause of the disability before benefits can be limited. We disagree. The phrase "due to" is ambiguous. "The words do not speak clearly and unambiguously for themselves. The causal nexus of 'due to' has been given a broad variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other." <u>Adams v. Director, OWCP</u>, 886 F.2d 818, 821 (6th Cir. 1989) (interpreting Department of Labor regulations). When a plan administrator is given authority to interpret the plan language, and

more than one interpretation is rational, the administrator can choose any rational alternative. Naugle v. O'Connell, 833 F.2d 1391, 1396 (10th Cir. 1987). Requiring a "significant" relationship between the condition and the disability is a rational interpretation.

Sixth, Mr. Kimber argues that given the nature of the plan language the doctrine of contra proferentem requires this court to resolve all ambiguities against Thiokol as drafter of the Plan. In Semtner v. Group Health Services, 129 F.3d 1390, 1393 (10th Cir. 1997) and McGee v. Equicor- Equitable HCA Corp., 953 F.2d 1192, 1200 & n.11 (10th Cir. 1992), we left undecided the issue of whether contra proferentem applies to the review of an ERISA plan. We now hold that when a plan administrator has discretion to interpret the plan and the standard of review is arbitrary and capricious, the doctrine of contra proferentem is inapplicable. In doing so, we adopt the reasoning of the Seventh Circuit in Morton v. Smith, 91 F.3d 867 (7th Cir. 1996).

> Courts invoke [contra proferentem] when they have the authority to construe the terms of a plan, but this authority arises only when the administrators of the plan lack the discretion to construe it themselves. Therefore, it is only used when courts undertake a de novo review of plan interpretations. When the administrators of a plan have discretionary authority to construe the plan, they have the discretion to determine the intended meaning of the plan's terms. In making a deferential review of such determinations, courts have no occasion to employ the rule of contra proferentem. Deferential review does not involve a construction of the terms of the plan; it involves a more

> abstract inquiry--the construction of someone else's construction. Because this case engages us in this more abstract exercise, we will not apply the rule.

Id. at 871 n.1 (citations omitted); see also Ross v. Indiana State Teachers Assoc. Ins. Trust, 159 F.3d 1001, 1011 (7th Cir. 1998) (contra proferentem inapplicable when judicial review of adminstrator's interpretation is other than de novo); Cagle v. Bruner, 112 F.3d 1510, 1519 (11th Cir. 1997) (holding that district court erred in construing ambiguities against drafter under arbitrary and capricious review); Pagan v. Nynex Pension Plan, 52 F.3d 438, 443 (2d Cir. 1995) (limiting the use of contra proferentem to cases in which court reviews ERISA plan de novo); Winters v. Costco Wholesale, 49 F.3d 550, 554 (9th Cir. 1995) (holding "that the rule of contra proferentem is not applicable to self-funded ERISA plans that bestow explicit discretionary authority upon an administrator to determine eligibility for benefits or to construe the terms of the plan.").

Other courts have held contra proferentem applicable to review of ERISA plans but have done so only in the context of de novo review. See Hughes v. Boston Mutual Life Ins. Co., 26 F.3d 264, 268 (1st Cir. 1994) (applying contra proferentem to ERISA plan reviewed de novo); Heasley v. Heldon & Blake Corp., 2 F.3d 1249, 1257-58 (3d Cir. 1993) (holding contra proferentem applicable to ERISA plan reviewed de novo); Delk v. Durham Life Ins. Co., 959 F.2d 104, 105-06 (8th Cir. 1992) (applying contra proferentem to ERISA plan reviewed de

- 17 -

novo).  This is a separate question which we do not address here.

The Fifth Circuit is the sole court to apply contra proferentem in cases involving discretionary plans but has done so only in ERISA cases construing insurance policies and then as a part of its "unique two-step approach to apply[ing] the abuse of discretion standard."  Spacek v. Maritime Assoc., 134 F.3d 283, 298 n.14 (5th Cir. 1998) (noting that Fifth Circuit has only applied contra proferentem to ERISA cases construing insurance policies); Rhorer v. Raytheon Engineers & Constructers Inc., 181 F.3d 634, 642 (5th Cir. 1999) (discussing Fifth Circuit two step approach).  Since this approach merely melds contra proferentem into the required discretionary review, we do not view it as conflicting with our decision today.

Finally, Mr. Kimber argues that the doctrine of reasonable expectations requires that the plan be interpreted in his favor.  It is doubtful whether this doctrine has any application to ERISA disability benefit plans at all.  See Hightsue v. AIG Life Ins. Co., 135 F.3d 1144, 1150 n.3 (7th Cir. 1998) (noting that "the reasonable expectation doctrine may not even be applicable in ERISA cases."); see also Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 407 (9th Cir. 1997) (limiting the application of the doctrine to insurance contracts).  Allowing a beneficiary's expectations under the plan to dominate an administrator's interpretation would obliterate the discretionary review required

by Firestone.  See Estate of Shockley, 130 F.3d at 407 (noting that "extending the doctrine to ERISA pension plans would be inconsistent with circuit and Supreme Court precedent requiring abuse of discretion review of a retirement committee's actions.").  Accordingly, the reasonable expectation doctrine is inapplicable to the review of an ERISA disability benefits plan under the arbitrary and capricious standard.

B.      Different Levels of Benefits between Physically Disability and Mental Disablity under the ADA

Mr. Kimber and the EEOC argue Thiokol violated the ADA by employing a disability plan which distinguished between physical and mental disabilities. They argue that such a plan discriminates against disabled employees "because of [their] disability."  42 U.S.C. §12112(a).  This issue has been argued extensively in the other circuits and we see no need to address it at length here.

> While [Thiokol's disability] plan differentiated between types of disabilities, this is a far cry from a specified disabled employee facing differential treatment due to her disability.  Every [Thiokol] employee had the opportunity to join the same plan with the same schedule of coverage, meaning that every [Thiokol] employee received equal treatment.  So long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage for various disabilities. The ADA does not require equal coverage for every type of disability; such a requirement, if it existed would

- 19 -

> destabilize the insurance industry in a manner definitely not intended by Congress when passing the ADA.

Ford v. Schering-Plough Corp., 145 F.3d 601, 608 (3d Cir. 1998), cert. denied, 119 S.Ct. 850 (1999). The Fourth, Sixth and Seventh Circuits have also addressed the same issue and arrived at the same conclusion. See Lewis v. Kmart Corp., 180 F.3d 166, 170 (4th Cir. 1999) (holding that "the ADA does not require a long-term disability plan that is sponsored by a private employer to provide the same level of benefits for mental and physical disabilities."); Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1015 (6th Cir. 1997) (en banc), cert. denied, 118 S.Ct. 871 (1998) ("The disparity in benefits provided in the policy at issue is also not prohibited by the ADA because the ADA does not mandate equality between individuals with different disabilities."); EEOC v. CNA Ins. Co., 96 F.3d 1039, 1044 (7th Cir. 1996) ("a plan that promised [employees] long-term benefits from the onset of disability until age 65 if their problem was physical, and long-term benefits for two years if the problem was mental or nervous" did not violate the ADA). See also Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 678 (8th Cir. 1996) (noting that excluding one disability from coverage is not a disability-based distinction violating the ADA so long as the exclusion applies equally to all individuals).

The D.C. Circuit also has ruled on this issue in analyzing the Rehabilitation Act and upheld distinctions in benefits based on physical and mental disabilities.

Modderno v. King, 82 F.3d 1059, 1061 (D.C. Cir. 1996), cert. denied, 117 S.Ct. 772 (1997).  Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge.  See Bragdon v. Abbot, 118 S.Ct. 2196, 2202 (1998); see also Patton v. TIC United Corp., 77 F.3d 1235, 1245 (10th Cir. 1996).

We adopt the reasoning of these cases and hold that the ADA does not prohibit an employer from operating a long term disability benefits plan which distinguishes between physical and mental disabilities.

AFFIRMED.