**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 15 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GREG PACK,

      Plaintiff-Appellant,

v.

THE MICHELIN
RETIREMENT PLAN,

      Defendant-Appellee.

No. 99-7088
(D.C. No. 98-CIV-584-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **KELLY** , and **HENRY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Greg Pack appeals from the district court's entry of summary judgment in favor of defendant, the Michelin Retirement Plan (the Plan), on his

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

claim for disability benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. Plaintiff argues that the Plan acted arbitrarily and capriciously by denying his application for disability benefits. We exercise jurisdiction under 28 U.S.C. § 1291, and we affirm.

## Background

Mr. Pack worked as a tire builder at the Uniroyal Goodrich Tire manufacturing facility in Ardmore, Oklahoma, a division of Michelin North America, Inc. (Michelin). He began work at the Ardmore tire facility in 1982. Beginning in June 1993, Mr. Pack began to suffer from fatigue, shivering, extreme cold, and palpitations. He reported that these symptoms intensified when he was at work, but subsided when he was absent from work. He underwent a battery of testing and medical examinations over the next two years.

From June 1993 to February 1994, Mr. Pack experienced symptoms to a degree necessitating absence from work on several occasions. Mr. Pack did not return to work after February 9, 1994. In September 1994, Mr. Pack's physician, Dr. Kenneth Hart, diagnosed him with multiple chemical sensitivity syndrome possibly attributable to exposure to one or more unknown chemicals or substances at the tire facility. Dr. Hart opined that Mr. Pack could return to work, but would have to avoid whatever unknown substances or odors may have created his

symptoms. Mr. Pack was terminated from employment in May 1995 because he failed to return to work.

In April 1995, Mr. Pack applied for disability retirement benefits under the Plan, in which he was a qualified, vested participant. The Plan is an employee pension plan authorized and governed by the requirements of ERISA. It was formed as a result of the merger of several pension plans maintained by Michelin, including the Uniroyal Goodrich Tire Company Tire Pension Plan. An entity referred to as the Pension and Benefits Appeals Board (the Board) is designated as the plan administrator for purposes of ERISA. The Plan gives the Board discretion to determine eligibility for benefits and to interpret the terms of the Plan.

The Plan provides for disability retirement benefits to any qualified participant "who, through no fault of his own, becomes totally and permanently disabled as a result of sickness or injury." Appellee's Supp. App., at 48. The Plan's summary plan description defines permanent and total disability to mean that the participant is "no longer able to meet the requirements of [his] job and [is] not able to qualify for transfer to another job in the Ardmore Plant." *Id.* at 77.

Mr. Pack's application for disability benefits was denied, and he appealed that decision to the Board. All of the Board members were given copies of the

materials and information submitted by Mr. Pack. The Board met, discussed the information, and denied his appeal on February 5, 1996. The Board determined that the information provided by Mr. Pack established that he could have performed the essential functions of his job as a tire builder. Mr. Pack brought suit in federal court claiming the Board's denial of benefits was arbitrary and capricious. The district court granted the Plan's motion for summary judgment and Mr. Pack appeals that decision.

**Discussion**

I.

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"'A court reviewing a challenge to a denial of employee benefits under 29 U.S.C. § 1132(a)(1)(B) applies an "arbitrary and capricious" standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms.'" *Kimber v.*

*Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999) (quoting *Charter Canyon*, 153 F.3d at 1135). It is undisputed that the Board had such discretion; thus, the court applies an arbitrary and capricious standard in reviewing the Board's denial of benefits. *See id*.

Mr. Pack argues, however, that the Board was operating under a conflict of interest and, therefore, the court should grant less deference to its decision.

> [I]f a plan administrator is operating under a conflict of interest, the court may weigh that conflict as a factor in determining whether the plan administrator's actions were arbitrary and capricious. The Tenth Circuit has adopted a sliding scale, decreasing the level of deference in proportion to the severity of the conflict. The conflict, then, is weighed as one factor in determining whether the plan administrator's decision was arbitrary and capricious.

*Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1295 (10th Cir. 2000) (quotations and citation omitted).

Mr. Pack argues, for the first time on appeal, that the Board was operating under a conflict of interest because the Board "served in the dual capacity of insurer and adjudicator." Appellant's Br. at 8. We have recognized that there are some circumstances in which a plan administrator can be operating under a conflict of interest where it is both the plan administrator and the insurer. *See Pitman*, 217 F.3d at 1295-96. It is a general rule, however, that this court will not consider an issue on appeal that was not raised below. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992). Mr. Pack did not

make any legal argument before the district court that the Board was operating under a conflict of interest, nor did he present sufficient factual evidence to enable the district court to make a determination whether any such conflict of interest existed. *See Pitman*, 217 F.3d at 1296 (discussing factors to be considered by court in determining whether conflict of interest exists). Moreover, the district court independently recognized the possibility that the Board had a potential conflict of interest, and appropriately weighed this as one factor in determining whether the Board's decision was arbitrary and capricious. *See* Appellant's App. at 23.

## II.

Under the arbitrary and capricious standard of review, we will not set aside a plan administrator's decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith. *See Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1292 (10th Cir. 1999).

> When reviewing under the arbitrary and capricious standard, the Administrator's decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [its] knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis. The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness-- even if on the low end.

*Kimber*, 196 F.3d at 1098 (quotations omitted).

Mr. Pack raises several issues with respect to his claim that the Board's denial of benefits was arbitrary and capricious. First, he contends the Board erroneously interpreted Dr. Hart's report as a release for him to return to work. After evaluating Mr. Pack for several months, Dr. Hart reported in September 1994, that while a review of the available literature "failed to reveal any published material or opinions that would support a toxic exposure as the cause of Mr. Pack's condition," Appellee's Supp. App. at 101, nevertheless, "there is a strong suggestion that Mr. Pack is sensitive or hypersensitive to the odors that are present at his place of employment." *Id*. at 102. In the disputed passage in his report, Dr. Hart concluded:

> While I feel that Mr. Pack is in good health at this time, I am convinced that re-exposure to these odors or substances would produce the symptoms that he experienced originally and for which he was recently evaluated. Based on this then, my recommendations would be that Mr. Pack could, in fact, return to work but would have to avoid any future exposures to the substances which may have created the symptoms originally.

*Id.*

The Board interpreted this as meaning that Mr. Pack was able to return to work at the tire facility. Mr. Pack contends it would have been impossible for him to return to work and still avoid the irritants at his job site. We conclude the Board's interpretation of Dr. Hart's report was reasonable, because it is clear from Dr. Hart's report and the other evidence before the Board that Mr. Pack was

currently in good health and able to work, but that further observation of Mr. Pack at work was needed in order to ascertain what, if any, odors or substances at the tire facility were responsible for Mr. Pack's symptoms and whether Mr. Pack's symptoms reoccurred if he worked in different areas of the plant. Mr. Pack never attempted to return to work to see if he could avoid exposure to whatever substance or odor may have triggered his symptoms; thus there was no evidence before the Board to support his claim that he could not return to work at the tire facility under any conditions.

Mr. Pack next contends the Board was inappropriately swayed by the Social Security Administration's (SSA) determination that he was not disabled. Because the SSA's standards for determining disability differ significantly from those used to determine disability under the terms of the Plan, he contends this evidence was inadmissable and improperly considered by the Board. He cites no authority for this proposition. The Board took into consideration the SSA's finding that Mr. Pack's chemical sensitivity "caused no severe physical limitations which would prevent [him] from working." Appellee's Supp. App. at 105. This report was only one item in the totality of information presented to, and considered by, the Board. There is no evidence that the Board placed any conclusive or otherwise undue reliance on this particular report, or that its consideration of this report rendered its denial of benefits arbitrary and capricious.

Mr. Pack also contends it was inappropriate for the Board to have considered the medical report from Dr. Carnahan, who opined that it was necessary to attempt further trials to see if Mr. Pack was able to work in other areas of the tire facility. Dr. Carnahan also noted that Mr. Pack seemed unwilling to attempt a trial of work and had not returned to work status at the plant. Mr. Pack disputes that he made no attempts to return to work and contends that this dispute precluded a grant of summary judgment.

It is undisputed that Mr. Pack did not attempt to return to work after February 1994. Dr. Carnahan's recommendation that further trials at work be attempted was written a year later, in February 1995. His recommendation was consistent with an August 1994 medical report from the University of Oklahoma's Health Sciences Center recommending that Mr. Pack be observed at work to see if a chemical effect could be observed and with Dr. Hart's September 1994 report that he could return to work if he avoided the as yet unidentified substance. Thus, it is undisputed that after the August and September 1994 reports, Mr. Pack never attempted to see if he could avoid exposure to irritating chemicals or odors at work, or if he could work in other areas of the facility. Therefore, the Board's consideration of Dr. Carnahan's report did not render its decision arbitrary or capricious.

Mr. Pack also contends the Board erroneously relied on an early medical diagnosis in June 1993 suggesting that the most likely cause of his illness was a low blood oxygen level caused by his cigarette smoking. Mr. Pack contends that he did stop smoking and that physicians later ruled out cigarette smoking as a causative factor for his illness. This evidence, however, was never presented to the Board. "An administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992); *see also Kimber*, 196 F.3d at 1098 ("[t]he reviewing court may consider only the evidence that the administrators themselves considered on or before the final decision denying benefits." (quotation omitted)).

Based on our review of the record on appeal, we agree with the district court that Mr. Pack failed to establish a genuine issue of material fact that the Board acted arbitrarily and capriciously in denying benefits. The record contains

substantial evidence in support of the Board's determination.  Accordingly, the judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge