**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 25 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SIMMONS FOODS, INC.,

Plaintiff-Appellant,

v.

JEFFREY L. WILLIS; WILLIS &
HOLMES, P.A.; BILL H. RAYMOND;
SCHULTZ & LONKER, CHTD.,

Defendants-Appellees.

No. 02-3044
(District of Kansas)
(D.C. No. 97-CV-4192-RDR)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

## I.    INTRODUCTION

Appellant, Simmons Foods, Inc. ("Simmons"), was a creditor of Teets Food

Distribution Company, Inc. ("Teets"). In 1995, Teets filed for Chapter 11

bankruptcy reorganization but continued to operate its business as a debtor in

possession. Defendants Willis and Raymond represented Teets in the bankruptcy

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

proceeding. After a reorganization plan was confirmed, Teets defaulted on its obligations and its business was liquidated. On August 29, 1997, the bankruptcy court entered a final decree closing the estate. Thereafter, Simmons filed a complaint in federal court alleging fraud and negligence on the part of Defendants. Defendants' motion for summary judgment was granted by the district court and Simmons brought this appeal.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the grant of summary judgment in favor of Defendants.

## II.    FACTUAL BACKGROUND

On or about April 5, 1995, Teets filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. After Teets filed its petition, Simmons filed a $500,000.00 claim against the estate and asserted that it had a perfected security interest in Teets' accounts receivable. Teets filed an adversary proceeding to set aside Simmons' alleged security interest as a preferential transfer.

On April 28, 1995, while the adversary proceeding was pending, Teets filed schedules in the bankruptcy court which included an itemized list of its accounts receivable. Additionally, an unsecured creditors committee was formed on May 3, 1995. Two days later the creditors committee sent Teets a written request for financial information including its balance sheets and income statements. Simmons' credit manager, Randy Hart, served as Simmons' representative on the

unsecured creditors committee. On May 8, 1995, Hart wrote a memorandum to the attorney representing Simmons' in the bankruptcy proceeding informing him of possible discrepancies and misinformation in the financial data being provided by Teets. Among Hart's concerns was his belief that Teets had overstated its accounts receivable "by the $30 thousand that [it] will lose in the Church's [Fried Chicken] bankruptcy."

A Rule 2004 examination of Teets' accountant Gary Ely was conducted on August 10, 1995 and both Hart and Simmons' attorney were present. At the Rule 2004 examination, Ely testified that approximately $18,000.00 of bad debts had not been written off of Teets' accounts receivable because the debts had not yet been turned over for collection. Ely further testified that he had not been asked to analyze Teets' accounts receivable to determine if any should be written off, had not been given any information as to which receivables Teets was considering writing off, and had no idea how many of the accounts were bad. Ely did, however, testify that the Church's Fried Chicken[1] account receivable referred to in Hart's May 8, 1995 memorandum had not been written off or discounted even though the payor had filed for Chapter 11 bankruptcy protection.

---

[1]The record of the Rule 2004 examination reveals that the account receivable was actually payable by a company known as Wil-Ken. Wil-Ken operated two Popeye's Chicken franchises in Wichita, Kansas.

On October 10, 1995, Teets filed a plan of reorganization and a disclosure statement. The parties thereafter settled the adversary proceeding and Teets prepared an amended plan of reorganization and an amended disclosure statement. Pursuant to the amended plan, $160,000.00 of Simmons' claim was treated as secured by Teets' accounts receivable. Simmons was treated as a Class VI unsecured creditor as to the remainder of its claim.

Financial statements filed by Teets and provided to the creditors committee indicated that the company lost $42,000.00 in January 1996. The committee observed that Teets was "in violation of four of the agreed-upon parameters defining default" in the proposed amended plan. On February 26, 1996, however, Simmons voted in favor of the amended plan of reorganization. Both the amended plan and the amended disclosure statement were approved by the bankruptcy court on March 8, 1996. Teets subsequently defaulted on its obligations under the amended plan and the estate was liquidated. The final decree closing the estate was entered by the bankruptcy court on August 29, 1997. Simmons has received only $1,373.25 from Teets toward satisfaction of the debt owed Simmons.

Defendants Willis and Raymond are both attorneys licensed to practice in Kansas and both represented Teets throughout the bankruptcy proceedings. On September 30, 1997, Simmons filed a complaint in federal court alleging that

Defendants owed a duty to the bankruptcy estate and its creditors; that they either negligently or willfully concealed information regarding the true value of Teets' accounts receivable; that Defendants withheld this information in order to obtain Simmons' vote in favor of the amended plan of reorganization; and that Simmons suffered damages as a result of Defendants' conduct. Defendants filed a motion for summary judgment which was granted by the district court.

The district court first concluded that all of Simmons' claims were barred pursuant to the doctrine of res judicata. As to Simmons' negligence claims, the court additionally concluded that under Kansas law, Defendants did not owe a duty of care to Simmons upon which a negligence claim could be based. Finally, the court determined that summary judgment was appropriate because expert testimony was necessary to establish a causal link to damages and Simmons had failed to offer expert testimony on causation. As to the fraud claims, the district court held that the record demonstrated beyond a reasonable doubt that Simmons had general knowledge of Teets' failure to discount or write off bad debts and, consequently, it could not demonstrate that it justifiably relied on Defendants' representations and/or omissions. Alternately, the court concluded that Simmons had failed to offer expert testimony establishing a causal link to the damages it suffered because of the alleged fraud.

## III. DISCUSSION

This court reviews a grant of summary judgment *de novo*, applying the same standard as the district court. *See Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999). Under that standard, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether a genuine issue of material fact exists, all "justifiable inferences" are drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, if the party opposing the motion "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Simmons challenges each of the bases for the district court's decision to grant summary judgment in favor of Defendants. Because it is dispositive, however, it is necessary for us only to address the district court's conclusion that summary judgment was appropriate because Simmons failed to present expert testimony establishing a causal link to damages.

Under Kansas law, a plaintiff asserting either a negligence claim or a fraud claim must demonstrate a causal link between the alleged wrongful act and the

alleged damages. *See Hesler v. Osawatomie State Hosp.*, 971 P.2d 1169, 1174 (Kan. 1999) (negligence claim); *Canterbury Court, Inc. v. Rosenberg*, 582 P.2d 261, 269-70 (Kan. 1978) (fraud claim). The Kansas Supreme Court has held that expert testimony is required to prove causation in negligence actions unless causation is "self-evident" from the evidence in the record. *Moore v. Associated Material & Supply Co.*, 948 P.2d 652, 659 (Kan. 1997). Defendants argue that expert testimony is necessary to establish causation on both the negligence and fraud claims asserted by Simmons. Simmons counters that the causation issue is self-evident and can be resolved by "simple reasoning." According to Simmons, the "[d]amages claimed in the instant case are simply the net worth diminishment determined by [Teets'] own monthly records plus the loss of prompt collection of accounts receivable."

At the core of both the negligence and fraud claims is Simmons' allegation that Defendants withheld information and misrepresented the true value of Teets' accounts receivable. Simmons asserts that it would not have voted for the amended plan of reorganization and would have made a motion to convert the Chapter 11 bankruptcy into a Chapter 7 liquidation if it had been provided accurate financial information. Simmons further alleges that Teets' net worth was severely diminished by the delay in liquidating the business. Consequently, to prevail on its claims, Simmons must prove, at a minimum, that any delay in

liquidating the bankruptcy estate was the result of Defendants' negligent or fraudulent acts. Simmons must also show that the assets of the bankruptcy estate available to pay its claim against the estate diminished during the reorganization period and that such diminishment would not have occurred if the estate had been liquidated immediately. To meet this burden, Simmons must first establish that it could have forced Teets' liquidation. Further it must demonstrate how liquidation would have affected the operation of Teets and must apply that analysis when comparing the amount it would have received through an immediate liquidation with the amount it actually received.

Simmons, however, has proffered *no* evidence that would demonstrate Defendants' negligent or fraudulent acts caused the damages it alleges. Although Simmons engaged the services of a bankruptcy attorney as its expert, this attorney offered no opinion on causation and specifically declined to opine on the issue of damages. Further, its appellate briefs do not direct this court to any evidence in the record that supports the required element of causation. Its argument on the issue addresses only the *amount* of damages it allegedly suffered, not the essential question of whether those damages were *caused* by the negligent or fraudulent acts of the Defendants. Simmons' conclusory allegations on the causation element are insufficient. *See Mitchell v. Henderson*, 202 F.3d 282 (10th Cir. 2000). Because causation is not "self-evident" from evidence in the record,

expert testimony was required.  *Moore*, 948 P.2d at 659.  Simmons failed to offer such testimony and, consequently, has failed to establish an essential element of its case.

**IV.   CONCLUSION**

This court concludes that, under Kansas law, expert testimony was necessary to establish the essential element of causation on both the negligence and fraud claims asserted by Simmons against Defendants.  Because Simmons has failed to proffer such evidence, it has failed to "make a showing sufficient to establish the existence of an element essential to [its] case," and summary judgment was appropriate.  *Celotex Corp.,* 477 U.S. at 322.  Accordingly, the order of the district court granting Defendants' motion for summary judgment is **affirmed**.  Simmons' motions to supplement the appendix filed on October 25, 2002 and October 31, 2002 are **granted**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge