**Robert WARNER, et al., Plaintiffs,**

v.

**AETNA HEALTH INCORPORATED, et al., Defendants.**

**No. CIV–03–544–A.**

United States District Court, W.D. Oklahoma.

Aug. 23, 2004.

Vera Aktansel, Norman, OK, for Plaintiffs.

Mark D. Spencer, Amy D. White, McAfee & Taft, P.C., Oklahoma City, OK, for Defendants.

## MEMORANDUM DECISION

ALLEY, District Judge.

This matter is before the Court for disposition of claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B).[1] The Court has received the pertinent administrative record and the parties' briefs on the merits. The Court now issues findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). For reasons that follow, the Court finds in favor of Defendants.

## STANDARD OF DECISION

During prior proceedings in this case, the Court has determined that Defendant Aetna Life Insurance Company is the claim administrator or fiduciary under Defendant York International Corporation's employee welfare benefit plan and that the Court must apply an arbitrary and capricious standard in its review of Aetna's decision to terminate Robert Warner's disability benefits. (Order of April 6, 2004, at 2–3.) Under this deferential standard, the inquiry is limited to whether the administrator's application of the plan was reasonable. *Charter Canyon Treatment Ctr. v.*

---

1. Although both Robert Warner and his wife, Thelma Warner, are named plaintiffs, the only claim asserted is that Robert Warner's disability benefits under an ERISA plan were wrongly terminated. (Am. Compl. at 2–3.) The current briefs do not address the issue of the proper plaintiff. In view of the disposition reached below, however, the Court need not decide what claim, if any, might inure to Thelma Warner from her husband's entitlement to benefits.

*Pool Co.*, 153 F.3d 1132, 1136 (10th Cir. 1998); *see Hickman v. Gem Ins. Co.*, 299 F.3d 1208, 1213 (10th Cir.2002); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir.1999). Specifically, " '[t]he [administrator's] decision will be upheld unless it is not grounded on *any* reasonable basis.' " *Cirulis v. UNUM Corp.*, 321 F.3d 1010, 1013 (10th Cir.2003) (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir.1999)).

 Because Aetna was also the insurer liable to pay any monetary benefits received, however, the Court has ruled that Aetna was operating under a conflict of interest and so a modified "sliding scale" standard applies. (Order of April 6, 2004 at 3.)[2] Under this standard, the Court weighs the conflict as a factor in determining whether Aetna abused its discretion, and the amount of deference given to Aetna's decision may decrease "on a sliding scale in proportion to the extent of conflict present." *McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1258 (10th Cir.1998); *see Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir.1999); *Jones*, 169 F.3d at 1291; *Charter*, 153 F.3d at 1135–36; *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir.1996).[3]

The Court has also previously decided to accept the administrative record filed by Defendants on February 12, 2004, and to permit its supplementation only with certain plan documents. (Order of April 6, 2004, at 5.) The supplemental administrative record was filed April 21, 2004, and is properly before the Court for consideration. The Court has rejected Plaintiff's quest to add other materials to the record and to submit allegedly relevant evidence that was not presented to Aetna before its final decision was made. (Order of April 6, 2004, at 4; Order of July 13, 2004.) Neither the exhibits attached to Defendants' brief nor the exhibits appended to Plaintiffs' reply brief will be considered.[4]

## FACTS

Robert Warner worked for York as a maintenance supervisor until December, 1999, when he began receiving disability benefits under an ERISA plan sponsored by York. York was the plan administrator; Aetna was the claims administrator. Mr. Warner was then 53 years old and suffering from diabetes mellitus. The plan provided for Aetna to determine an employee's disability according to the following definition:[5]

---

**2.** Defendants arguably attempt to revisit this issue by arguing in their brief that Aetna's financial conflict "was not particularly significant" because its potential liability to Mr. Warner was only $154,636.77. (Defs.' Resp. Br. at 17, n. 19.) The court of appeals has determined, however, that when an insurer serves as claims administrator, a conflict of interest exists. *See Pitman v. Blue Cross & Blue Shield*, 217 F.3d 1291, 1296 (10th Cir. 2000). The dollar amount involved is relevant to the degree of the conflict.

**3.** The parties earlier briefed the application of *Fought v. UNUM Life Ins. Co.*, 357 F.3d 1173 (10th Cir.2004), which has now been vacated and replaced with a revised opinion. *See Fought v. Unum Life Ins. Co.*, 379 F.3d 997 (10th Cir.2004). Although the panel's decision is not final and may be the subject of another petition for rehearing, the Court ad-

dresses the new standard announced in *Fought* in the discussion below.

**4.** Citations to the record will utilize the Bates-stamp numbering affixed by Defendants, Administrative Record, "AR -"; and Supplemental Administrative Record, "SAR -."

**5.** Similar language appears multiple times in the plan documents—both for this definition and for other definitions and provisions—because the plan consists of several parts. The plan included both a short term disability (weekly) benefit funded by York and a long term disability (monthly) benefit funded by a group insurance policy issued by Aetna. Mr. Warner was receiving long term disability payments under the insurance policy when Aetna decided to terminate his benefits, and thus the Court will cite only the pertinent provisions of the insurance policy.

- During the period which ends right after the first 24 months benefits are payable in a period of total disability:

 You are not able, solely because of injury or disease, to perform the material duties of your own occupation; except that if you start work at a reasonable occupation you will no longer be deemed totally disabled.

- Thereafter during such period of total disability:

 You are not able, solely because of disease or injury, to work at any reasonable occupation.

(SAR 119.) The plan defined "Reasonable Occupation" to mean "any gainful activity for which you are, or may reasonably become, fitted by education, training, or experience." (SAR 119.)

The plan provided for a period of disability to end in certain circumstances, including if "Aetna determines you are able to participate in an Approved Rehabilitation Program and you refuse to do so." (SAR 120.) An "Approved Rehabilitation Program ... is a program of physical, mental, or vocational rehabilitation which: is expected to result in maximizing your employability; and is approved, in writing, by Aetna." (SAR 122.) This provision further stated:

 Aetna retains the right to evaluate you for participation in an Approved Rehabilitation Program.

 If, in Aetna's judgment, you are able to participate, Aetna may, in its sole discretion require you to participate in an Approved Rehabilitation Program.

(SAR 122.)

The reason for Aetna's decision to terminate Mr. Warner's disability benefits is undisputed. In April, 2001, during the first twenty-four months of disability, Aet-na notified Mr. Warner that it was terminating his claim for benefits effective April 1, 2001, because:

 Information provided by the vocational rehabilitation representative indicates that you have not been compliant with your rehabilitation plan since you refused to sign the rehab plan and refused to participate in rehab.

 In view of the above, Aetna Life Insurance Company is terminating your claim for disability benefits on the basis that you refuse or cease to participate in the rehabilitation program as required by the disability plan.

(AR 205, 400.) Aetna also informed Mr. Warner that it would review "any additional information you care to submit, such as medical information from all physicians who have treated you" and suggested a list of pertinent information, including a report of "the specific physical and/or mental limitations inherent to your condition which your doctor has placed on you as far as gainful activity is concerned ...." (AR 205, 400.) [6]

Mr. Warner, through counsel, appealed the termination decision. Counsel's letter informed Aetna of a determination by the Social Security Administration that Mr. Warner was disabled and stated that additional documentation of medical disability would be submitted. Counsel also stated:

 There is no way Mr. Warner is able to engage in a rehabilitation program and to deny his long term disability benefits on this basis is bad faith on the part of the insurer. Mr. Warner has not agreed to participate in rehabilitation because he is unable to participate.

(AR 203, 398.) Counsel asked to review all documents pertinent to Aetna's decision—

---

**6.** Despite this solicitation of additional medical information, it should be noted Aetna's decision to terminate Mr. Warner's benefits was *not* based on a determination that he was no longer disabled from his own occupation.

a prospect that was mentioned in Aetna's prior statement of Mr. Warner's appeal rights.

Aetna responded to counsel in a letter dated June 26, 2001, stating that a review of Mr. Warner's claim would commence, a decision would be made within sixty days, and any information should be submitted as soon as possible. Aetna also forwarded copies of "pertinent documents," except counsel was informed to contact York for plan documents. (AR 397.) In August, 2001, Aetna extended the sixty-day period. In September, 2001, Mr. Warner's counsel forwarded medical records from his treating physicians concerning evaluations done in October and December 2000. In November, 2001, Aetna issued its final decision upholding the termination decision. Aetna's appeal decision included a detailed recitation of medical information in the claim file leading up to the initial decision and a list of medical evidence reviewed by Aetna's medical directors during the appeal. Aetna's ultimate conclusion was that "the weight of medical evidence does not support the continuation of benefits under the above captioned policy." (AR 191, 336.) Subsequent efforts by Mr. Warner's counsel to reopen the appeal and to submit additional medical information for consideration were unsuccessful.

## DISCUSSION

Unlike many ERISA cases, this case does *not* present the question of whether an administrator reasonably determined that a claimant was no longer disabled. Mr. Warner's benefits were terminated within the "own occupation" period of disability without any finding that Mr. Warner could perform the duties of his former job. Aetna's decision instead was based on (1) a determination that Mr. Warner could participate in a rehabilitation program and (2) information that he had refused to cooperate with efforts to initiate a rehabilitation program. Plaintiffs chal-

lenge both components of the decision. For reasons discussed more fully below, the Court finds their challenge to be ineffectual because, first, they wrongly equate Aetna's conclusion that Mr. Warner was a candidate for rehabilitation with a finding that he was capable of full-time employment and, second, they inappropriately attack the veracity of the information relied on by Aetna to conclude that Mr. Warner was unwilling to participate in a rehabilitation program.

1. *Mr. Warner's Capacity for Participation in a Rehabilitation Program*

■ The plan does not state criteria for determining whether a disabled employee is able to participate in a rehabilitation program but places the decision within Aetna's judgment. (SAR 122, 479.) Based on a provision of the summary plan description, however, Plaintiffs argue that an employee must have the potential to return to work on a full-time basis to be a candidate for rehabilitation and that Mr. Warner could not be required to participate in a rehabilitation program because he was unable to return to work. (Pls.' Reply Br. at 6.) The cited provision defines "Approved Rehabilitation Program" to mean:

> ... a program of physical, mental, or vocational rehabilitation which:
>
> ● is expected to result in your return to work in your own occupation, or a reasonable occupation, on a full-time basis; and
>
> ● is approved, in writing by Aetna. The approval will be based on medical evidence and your potential for return to your own occupation or a reasonable occupation.

(SAR 486.) The Court finds in this definition no substantive limit on Aetna's discretion to require participation in a rehabilitation program of disabled employees who,

although not presently able to return to full-time employment, may be able to begin a rehabilitation program aimed at future full-time employment. This is made clear by a similar provision of the disability insurance policy governing Mr. Warner's benefits, which states that an approved rehabilitation program "is expected to result in maximizing your employability." (SAR 122.)

A review of the administrative record reveals that Aetna's decision to initiate rehabilitation services for Mr. Warner occurred in January of 2001 and was based on: (1) results of independent medical examinations requested by Aetna indicating that, at a minimum, Mr. Warner was capable of part-time employment "half days" (AR 217); and (2) information from York that Mr. Warner would be unable to return to his former job because he had been replaced (AR 040). After Aetna had identified Mr. Warner as a candidate for rehabilitation and attempted to initiate a program, Aetna received reports from his treating physician, Dr. Good that were vague concerning Mr. Warner's return-to-work status, stating "not at this time." (AR 237.) Dr. Good also completed functional and physical capacity evaluations indicating that Mr. Warner could work at least two hours a day (AR 240, 243). Based on this information, it was not unreasonable—under any definition of the term—for Aetna to require Mr. Warner to participate in an appropriate rehabilitation program designed to maximize his employability.[7]

The only countervailing information on the issue of Mr. Warner's capacity for

rehabilitation, and the point argued most strongly by Plaintiffs, is that the Social Security Administration issued a fully favorable decision in March 2001. Mr. Warner was determined to be disabled based on findings that he had numerous severe physical and mental impairments, that he retained the residual functional capacity for a very limited range of sedentary work, that he was unable to perform the requirements of his past work, and that the medical-vocational guidelines mandated a finding of disabled based on his age, education, work experience, and functional capacity. (AR 393–94.) Plaintiffs overstate the significance of these findings in the context of this case. The administrative law judge's findings represent a sequential analysis required by federal regulations to determine a claimant's eligibility for disability insurance benefits. A determination that during a certain time period Mr. Warner was under a "disability," that is, unable to engage in substantial gainful activity, does not mandate a conclusion that he was then incapable of *any* gainful activity or that he would be incapable of substantial gainful activity in the future. Aetna's determination that Mr. Warner was a candidate for a rehabilitation program was based on evidence of his capacity for part-time employment and a potential for future employment. Thus the decisions of the Social Security Administration and Aetna are not inconsistent.[8]

### 2. *Mr. Warner's Refusal of Rehabilitation Services*

Plaintiffs challenge the truth of information conveyed to Aetna by a rehabilitation

---

7. Because the parties do not raise any issue of whether the rehabilitation program that Aetna attempted to initiate was appropriately tailored to Mr. Warner's functional capacity, the Court does not address the reasonableness of the rehabilitation plan itself.

8. Even were the Court to agree with Plaintiffs that Aetna should have explained more fully why its termination decision was unaffected by the social security disability decision, the proper remedy is a remand to the administrator for further findings or explanation, not a reversal of the decision. *Caldwell v. Life Ins. Co.,* 287 F.3d 1276, 1288 (10th Cir.2002).

consultant who reported alleged statements by Mr. Warner that he would not accept any rehabilitation program but would only return to his former job. Any factual dispute as to what Mr. Warner said to whom is simply irrelevant to the Court's conclusion that Aetna reasonably determined that Mr. Warner refused to participate in rehabilitation. The administrative record raises no question that Aetna actually received a report that Mr. Warner had refused to cooperate with an attempt to initiate a rehabilitation program. Nothing in the administrative record suggests that Aetna was unreasonable to rely on this report. Mr. Warner was informed in the initial termination letter that the decision was based on his refusal to sign a rehabilitation plan. He addressed this point in his appeal only by explaining that the basis of his refusal was a perceived inability to participate. As discussed above, this perception may have rested on a view equating a capacity for rehabilitation with a capacity for full-time employment. Because Mr. Warner's claim of incapacity for rehabilitation was not supported by the evidence in the administrative record—or by the opinion of his treating physician that he was capable of some work activity—Aetna acted reasonably, even under a *de novo* standard, in rejecting Mr. Warner's challenge to a termination of benefits based on his lack of participation in its rehabilitation program.

3. *The Effect of the Revised Panel Decision in Fought*

During the preparation of this memorandum, a panel of the court of appeals issued a revised opinion vacating *Fought v. UNUM Life Ins. Co.,* 357 F.3d 1173 (10th Cir.2004). *See Fought v. Unum Life Ins. Co.,* 379 F.3d 997 (10th Cir.2004). The substitute opinion, like the original one, attempts to clarify the "sliding scale" standard that applies to decisions of administrators operating under a conflict of interest. Both announce a new standard that adopts a burden-shifting approach. Under the revised decision, in cases where a "serious," "inherent," or "proven" conflict of interest exists, the administrator or fiduciary bears a burden of persuasion to show that its decision was reasonable and supported by substantial evidence. *Id.,* 2004 WL 1803364 at *6–7. The Court finds no need to decide questions about the precedential value of *Fought* and its meaning or application under the facts of this case. As indicated above, even under a *de novo* standard of decision, the outcome of this case would be the same. The Court simply finds that Aetna made a proper decision under the terms of the plan and evidence contained in the administrative record.

## CONCLUSION

Therefore, the Court finds in favor of the defendants on all claims. Judgment will be entered accordingly.