**Charity R. SHIELDS, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY and CNA Insurance Company, Defendants.**

**Civil Action No. 01–2375–KHV.**

United States District Court, D. Kansas.

June 27, 2002.

Lyra L. Johnson, Leland F. Dempsey, Dempsey & Kingsland, Kansas City, MO, for Plaintiff.

Gerald A. King, Casey O. Housley, Wilbur L. Tomlinson, Armstrong Teasdale, LLP, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff brings suit pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., alleging that defendants did not fulfill their obligations under a life insurance policy that she had taken out on her ex-husband. The matter is before the Court on Plaintiff Charity R. Shields' Motion And Memorandum In Support Of Summary Judgment (Doc. # 16) filed February 4, 2002, defendants' Motion For Summary Judgment (Doc. # 17) filed February 6, 2002 and defendants' Motion To Strike Plaintiff's Sur–Reply Brief (Doc. # 31) filed April 25, 2002.

## Factual Background

For purposes of the cross motions for summary judgment, the following facts are uncontroverted or deemed admitted.[1]

1. Preliminarily, the Court notes that this case involves two defendants, Continental Casualty Company and CNA Insurance Company. The parties consistently refer to defendant (singular), but the Court will refer to defendants (plural).

All parties have failed to comply with the local rules. Defendants object to all facts which plaintiff asserts, arguing that she has not cited record support for them. Plaintiff only cites record support for facts 13, 19, 20, 22, 23, 27 and a portion of fact 14. Plaintiff skipped number 3 in her listed facts and facts 6, 11 and 12 are merely acknowledgments that attached exhibits are true and accurate copies of various documents. Under D. Kan. Rule 56.1(a), "facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies." On account of plaintiff's noncompliance with D. Kan. Rule 56.1(a), the Court shall not consider facts 1, 2, 4, 5, 7–10, 15–18, 21, 24–26 and 28 and a portion of fact 14.

In her reply brief, plaintiff contends that many of her otherwise unsupported facts are included in the Joint Stipulation Of Facts ("Joint Stipulation") (Doc. # 19) filed February 6, 2002 and that her reply provides sufficient record support for the remaining facts. The Court will consider facts 1, 2 and 15 because they are indeed undisputed. With regard to some facts that are purportedly supported by the Joint Stipulation (Doc. # 19), plaintiff has added details which are without record support. The Court will disregard the additional details presented in fact 5 (plaintiff's insurance plan included a Contributory Accidental Death and Dismemberment Plan and Dependent Life Insurance Plan, both of which plaintiff owned), fact 8 (the Dependent Life Plan was provided at no cost), fact 14 (Warren Shields relied heavily upon the support and assistance of his former wife and worked less than 30 hours a week), facts 16 and 17 (plaintiff's ex-husband was an insured under the Plan), fact 21 (plaintiff did not receive a copy of the insurance policy until her husband died) and fact 28 (plaintiff exhausted all administrative remedies).

Plaintiff's reply brief attempts to comply with D. Kan. Rule 56.1(a) by adding citations to support fact 10 (plaintiff was only provided a copy of the summary plan, not the Plan itself) and a portion of fact 21 (the terms of the policy are more restrictive than the terms of the summary plan). Record support is required in plaintiff's initial motion, so that defendants can respond to plaintiff's cited material. As to facts 10 and 21, plaintiff's attempt to comply with the local rule in her reply is insufficient.

In specific objections to plaintiff's factual statement, defendants set forth 13 lettered paragraphs to controvert 28 numbered paragraphs. Only five of defendants' paragraphs specifically state which of plaintiff's asserted facts is controverted. Under D. Kan. Rule 56.1(b)(1), "[e]ach fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed." The Court will only consider those responses that state the number of the disputed fact at issue. In addition, the Court need not consider those responses which controvert facts that the Court is not considering due to plaintiff's failure to pro-

Plaintiff, a Kansas resident, began working for Continental Casualty Company ("Continental"), an Illinois corporation, on July 31, 1995. As an employee of Continental, plaintiff participated in the CNA Comprehensive Group Insurance Plan ("the Plan"). Continental provides benefits for these plans through insurance contracts that it has entered into with Continental Assurance Company and Continental Casualty Company.[2] The Plan gives the Plan administrator authority to interpret the Plan and decide all questions concerning the Plan, including the eligibility of any person to participate in the Plan, as follows:

4. Powers and Duties of the Plan Administrator

The Plan Administrator will have full power to administer the Plan in all of its details, subject to applicable requirements of law. For this purpose, the Plan Administrator's powers will in-

vide proper support. Therefore the Court will only consider paragraphs e (controverting fact 11) and m (controverting fact 27) and not paragraphs d (controverting fact 10), j (controverting fact 24) and a portion of i (controverting a stricken part of fact 21).

Finally, plaintiff has filed a sur-reply to defendants' summary judgment motion. See Plaintiff's Response To "Defendant's Reply To Plaintiff's Brief Opposing Defendant's Motion For Summary Judgment" (Doc. # 30) filed April 15, 2002. Defendants have moved to strike this pleading, arguing that sur-replies are not contemplated under the Federal Rules of Civil Procedure or the local rules. In addition, defendants argue that they are prejudiced by the filing of this sur-reply because they were not allowed to file a sur-reply in support of their opposition to plaintiff's summary judgment motion. In her sur-reply, plaintiff asserts that she is filing her pleading under D. Kan. Rule 6.1(e)(2). That rule provides as follows:

A party shall have 20 days to respond to a motion to dismiss or for summary judgment. After the service of a memorandum in opposition, the moving party may file a reply memorandum in support of the motion within 20 days.

Nothing in this rule contemplates the filing of sur-replies. Plaintiff has not filed a response to defendants' motion to strike and any response was due on May 9, 2002. Defendants' motion to strike is sustained as unopposed and is also well taken on the merits.

2. Plaintiff attempts to supplement this fact by stating that Continental has a conflict of interest with regard to its insurance plans because it both funds and administers them. Plaintiff cites a portion of a document titled "How Benefit Plans Are Funded" in a larger pamphlet titled "Benefits at CNA" which states

The Long Term Disability Plan, Group Long Term Care Plan, Life Insurance Plan, Accidental Death and Dismemberment Plan and Business Travel Accident Plan are all insured plans that provide their benefits through insurance contracts CNA has entered with:

Continental Assurance Company and
Continental Casualty Company
Chicago, Illinois 60685

Premiums paid by CNA and by employees who participate in these plans are paid to the insurance companies, and the insurance companies make claims payments.

Exhibit B in Plaintiff Charity R. Shields' Motion And Memorandum In Support Of Summary Judgment ("Plaintiff's Motion") (Doc. # 16) filed February 4, 2002 at GI 10. This description of the way in which the plans operate does not necessarily suggest that Continental has a conflict of interest. In addition, plaintiff does not cite evidence that Continental Casualty Company (as opposed to Continental Assurance Company) funded the Plan or that Continental Casualty and Continental Assurance are one and the same.

Defendants object generally to Exhibit B as an "unauthenticated collage of various documents" that is not "a true and complete copy of any Summary Plan Description booklet." Brief In Opposition To Plaintiff's Motion For Summary Judgment (Doc. # 23) filed March 4, 2002 at 2. Plaintiff swears that Exhibit B is a true and accurate copy of *excerpts* from the Plan description. Plaintiff's Motion (Doc. # 16) at ¶ 11. Interpreting the record in the light most favorable to plaintiff, the Court will consider the excerpts as excerpts from the Summary Plan Description booklet. Defendants were free to supplement the record with a complete booklet or other excerpts from it.

clude, but will not be limited to, the following authority, in addition to all other powers provided by this Plan:

...

(b) To interpret the Plan, its interpretation thereof in good faith to be final and conclusive on all persons claiming benefits under the Plan;

(c) To decide all questions concerning the Plan and the eligibility of any person to participate in the Plan;

CNA Comprehensive Group Insurance Plan in Joint Stipulation (Doc. # 19) at AR0046–47.

After plaintiff began working for Continental, she selected coverage for herself, her husband (Warren Shields) and their child (Skyler Shields) under the Accidental Death and Dismemberment insurance provided by Continental Casualty Company Policy No. SR–00183817 ("the Accidental Death Policy"). Under the Accidental Death Policy, the "insured" is "the eligible person whose insurance is in force under the terms of this policy" and "insured person" means the insured and his or her insured family members. Accidental Death Policy in Joint Stipulation (Doc. # 19) at AR0093.

Eligibility for Insurance: The Accidental Death Policy states that "[a]ll persons described in Statement 2 of the Application are eligible for insurance under this policy."[3] *Id.* Statement two of the application in turn provides that eligible persons include "active full-time employees," the spouse of an insured employee and "each unmarried dependent child" of an insured employee. Accidental Death Policy Application in Joint Stipulation (Doc. # 19) at AR0106. The Summary Plan Description states that dependents eligible for coverage under the Plan include:

* Your legal spouse.

* Your unmarried children between the age of 3 months and the end of the calendar month in which they reach age 19.

* Your unmarried children from age 19 up to the end of the calendar month in which they reach age 25, if they attend an educational institution full-time and are financially dependent on you for support.

Summary Plan Description (Exhibit B) in Plaintiff's Motion (Doc. # 16) at SB 11. Plaintiff claims that this language is ambiguous because it states when an insurable interest in a child ends, but does not similarly state when an insurable interest in someone who had been a legal spouse ends.

Cessation of Insurance: The Accidental Death Policy provides that insurance on any insured will cease on the earliest of the following dates: (1) the date insurance for the Insured terminates; or (2) the premium due date that falls on or next follows the date such person ceases to be an eligible family member as described in Statement 2 of the Application—in this case, "[t]he spouse of a Class II Insured Employee." Accidental Death Policy in Joint Stipulation (Doc. # 19) at AR0094, AR0071. The Summary Plan Description states that "[n]ormally, your dependents' coverage ends when your coverage ends." Summary Plan Description (Exhibit B) in Plaintiff's Motion (Doc. # 16) at SB 18, and that coverage "also ends when your dependent no longer qualifies as a dependent (for example, a child reaches the maximum age or marries)." *Id.* Plaintiff notes that under this language, coverage for a dependent child ends when he or she no longer qualifies as a dependent due to reaching a certain age or marrying. She argues that

---

**3.** Plaintiff attempts to supplement this fact by adding a quotation from the summary plan descriptions. Plaintiff does not provide the correct citation for this proffered fact, however, so the Court will not consider it.

since it does not specify when coverage for a dependent spouse ends, such a person can retain coverage as long as he or she is financially dependent, regardless of marriage or age.

Because plaintiff and Warren Shields were married when she elected coverage, he became an "insured person" under the Accidental Death Policy. Plaintiff paid a bi-weekly premium for the Accidental Death Policy, by deduction from her pay-check.

Plaintiff also elected coverage under a Dependent Life Insurance Policy ("the Life Insurance Policy"). The summary description for the Life Insurance Policy states that "[y]ou are eligible to enroll your dependants for life insurance coverage effective on your first date of active employment (your eligibility date)" and that "[y]our dependents include ... [y]our legal spouse." Summary Plan Description (Exhibit B) in Plaintiff's Motion (Doc. #16) at SB 9. The summary description further states that "[d]ependent coverage ends when ... [y]our spouse ceases to be your lawful spouse." *Id.* at SB 10.

On June 11, 1996, plaintiff and Shields divorced. Plaintiff did not ask Continental to stop the payroll deduction for the accidental death coverage for Warren Shields, and bi-weekly premium payments were deducted from plaintiff's paycheck after the divorce. Warren Shields continued to live with plaintiff and helped raise Skyler. At the time, Shields worked as a freight clerk at Labor Ready.[4]

On September 29, 1998, Shields died of gun wounds. In due course, plaintiff submitted a claim for benefits under the Accidental Death Policy.

On February 9, 1999, Continental advised plaintiff of its decision to not pay her claim because the terms of the Plan provided that "[c]overage terminates with respect to any insured family member on the premium due date that falls on, or next follows the date such person ceases to be an eligible family member as described in Statement 2 of the Application, i.e. coverage for Warren Shields ceased as of the premium renewal date next following his divorce from Charity." Letter From Tom Gravenstine in Joint Stipulation (Doc. #19) at AR0022. On February 17, 1999, plaintiff appealed the denial of benefits to the Continental Appeals Committee. On April 27, 1999, the Appeals Committee affirmed the denial of benefits.[5]

On July 30, 2001, plaintiff filed suit pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., alleging that defendants had failed to fulfill their obligations under the Accidental Death Policy. Plaintiff seeks to enforce the policy, receive legal and equitable relief under ERISA, and recoup the costs and expenses of bringing this action. Plaintiff contends that she is entitled to summary judgment because under the Summary Plan Description for the Accidental Death Policy, she had an insurable interest in her ex-husband's life even after they divorced. In the alternative, she ar-

---

**4.** Plaintiff attempts to supplement this fact, adding that Shields relied on her support and assistance because he worked less than 30 hours a week at various temporary jobs. While plaintiff provides a record citation for the fact that Shields worked for Labor Ready, she does not support her assertion that he worked less than 30 hours a week or that Labor Ready only provided temporary employment. The Court will therefore disregard these additional facts.

**5.** In their motion for summary judgment, defendants attempt to add a factual statement that the administrator's denial of plaintiff's claims was not arbitrary or capricious and that it is entitled to judgment as a matter of law. As plaintiff correctly points out, this "fact" is actually legal argument. In addition, defendants do not provide any citation for their statement. For these reasons, the Court will not consider this paragraph.

gues that the Plan language is ambiguous and should be resolved in her favor. Defendants contend that they are entitled to summary judgment because the decision to deny benefits was not arbitrary and capricious.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. See *Applied Genetics*, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment. See *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. See *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Analysis

### I. Standard Of Review

The first question is what standard of review applies to the decision to deny plaintiff's claim. Plaintiff asserts that this case involves policy interpretation of an ERISA benefits plan, which is a question of law. Specifically, plaintiff claims that under the Accidental Death Policy, she had an insurable interest in the life of her legal spouse; that the Summary Plan Description is ambiguous as to the length of her insurable interest in the life of Warren Shields; and that the Court must therefore review the denial of benefits under a de novo standard of review. See Plaintiff's Motion (Doc. # 16) at 5–6 (citing *Steil v. Humana Kansas City*, 124 F.Supp.2d 660, 662 (D.Kan.2000)). Defendants, on the other hand, argue that the proper standard of review is whether the decision to deny benefits was arbitrary and capricious. Plaintiff responds that even if this is the proper standard, the Court should not ap-

ply it because Continental operates under a conflict of interest.

■ In this case, the Plan administrator has the authority to interpret the plan and determine who is eligible for participation. Specifically, the Plan states:

The Plan Administrator will have full power to administer the Plan in all of its details, subject to applicable requirements of law. For this purpose, the Plan Administrator's powers will include, but will not be limited to, the following authority, in addition to all other powers provided by this Plan:

. . .

(b) To interpret the Plan, its interpretation thereof in good faith to be final and conclusive on all persons claiming benefits under the Plan;

(c) To decide all questions concerning the Plan and the eligibility of any person to participate in the Plan;

CNA Comprehensive Group Insurance Plan in Joint Stipulation (Doc. # 19) at AR0046–47. "A court reviewing a challenge to a denial of employee benefits under 29 U.S.C. § 1132(a)(1)(B) applies an 'arbitrary and capricious' standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir.1999) (quotations and citations omitted). This Plan expressly gives the administrator the discretion to determine whether an individual is eligible to participate—thus indicating that the Court should apply the arbitrary and capricious standard in reviewing the administrator's decision.

See *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir.1996). Under the arbitrary and capricious standard of review, a court "may not overturn a plan administrator's decision if it was reasonable, given the terms of the plan, and made in good faith." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1292 (10th Cir.1999). The Tenth Circuit has explained this as follows:

When reviewing under the arbitrary and capricious standard, the Administrator's decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within his knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis. The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end.

*Kimber*, 196 F.3d at 1098.

■ Plaintiff argues that the issue before the Court is not eligibility for Plan benefits or the administrator's discretion within the Plan, but an ambiguity within the terms of the summary plan description. Although the Plan administrator decided that the Accidental Death Policy clearly precluded coverage because plaintiff and Warren Shields were divorced, see Letter From Tom Gravenstein Joint Stipulation (Doc. # 19) at AR0021, he apparently did not determine whether the terms of the Accidental Death Policy were ambiguous. Plaintiff alleges that the Court should apply a de novo standard of review to the question whether the terms of the Accidental Death Policy were ambiguous.[6] See *Deboard v. Sunshine Min.*

---

**6.** Plaintiff relies on *McGee v. Equicor–Equitable HCA Corp.*, 953 F.2d 1192, 1200 (10th Cir.1992), for the proposition that "we review the terms of the health agreement and [defendant's] denial of benefits de novo, but we apply the abuse of discretion standard to the plan physician's exercise of medical judgment in determining [plaintiff's] eligibility for benefits." In *McGee*, the Tenth Circuit affirmed the district court ruling that defendant had erroneously denied plaintiff benefits for short-term rehabilitative services. See *id.* at 1210. In *McGee*, the plan administrator did not retain discretion to determine how long an

& Refining Co., 208 F.3d 1228 (10th Cir. 2000) ("we apply a de novo standard of review to '[q]uestions of law, such as a court's interpretation of an ERISA plan when the plan's terms are clear and there is no grant of interpretive authority to a plan administrator—or even the preliminary determination whether an ERISA's plan language is silent or amibiguous [sic]. . . .' '").

Although the Court might interpret the denial of benefits to imply such a finding, the Plan administrator did not specifically find that the terms of the policy were unambiguous. In this regard, interpreting the record in the light most favorable to plaintiff, the Plan administrator made no explicit decision which is subject to review. Therefore the Court will determine under a de novo standard of review whether the Accidental Death Policy was ambiguous. The Plan administrator did determine that the terms of the Accidental Death Policy precluded coverage for Warren Shields. The Plan gave the Plan administrator discretionary authority to determine eligibility for coverage, so the Court will review that decision under an arbitrary and capricious standard.

 Plaintiff contends that a pure arbitrary and capricious standard should not apply because Continental both administers and funds the Accidental Death Policy and it therefore has a conflict of interest. As an initial matter, a conflict of interest is only a factor in determining whether there was an abuse of discretion, see Chambers, 100 F.3d at 826 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); it

does not change the standard of review. The Tenth Circuit has found that "the arbitrary and capricious standard is sufficiently flexible to allow a reviewing court to adjust for the circumstances alleged, such as trustee bias in favor of a third-party or self-dealing by the trustee." Chambers, 100 F.3d at 827 (quoting Sage v. Automation, Inc. Pension Plan & Trust, 845 F.2d 885, 895 (10th Cir.1988)). Furthermore, the mere fact that a plan is both administered and funded by the same company does not demonstrate a per se conflict of interest. See Kimber, 196 F.3d at 1098 (citing Jones, 169 F.3d at 1291 and Woolsey v. Marion Lab., Inc., 934 F.2d 1452, 1459 (10th Cir.1991)). In deciding whether a conflict of interest existed, the Court should "consider various, non-exhaustive factors including whether (1) the plan is self-funded; (2) the company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to the denial of benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan." Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1296 (10th Cir.2000).

While plaintiff has produced evidence that Continental could have funded and administered the Plan, she has not presented evidence regarding other relevant factors. Interpreting the facts in the light most favorable to plaintiff, a genuine issue of material fact exists as to whether Continental had a conflict of interest. Although the record does not present enough evidence to determine the severity of the

---

insured would be entitled to rehabilitative services. Instead, the plan limited short term rehabilitation "to those services which, in the judgement [sic] of the Plan Physician, can be expected to result in significant improvement of the Member's condition within a period of two months." Id. at 1201 (quoting policy). The plan gave plaintiff's physician the discre-

tion to determine whether rehabilitative services would be covered and such discretion was entitled to review under the arbitrary and capricious standard. Because the plan did not give an administrator the discretion to interpret the terms of the health agreement, the administrator's decision with regard to plan interpretation was reviewed de novo.

conflict, the Court will lessen its deference "to the degree necessary to neutralize any untoward influence resulting from the conflict." *Caldwell v. Life Ins. Co. Of N. Am.*, 287 F.3d 1276, 1283 (10th Cir.2002).

## II. Cross Motions For Summary Judgment

### A. Plaintiff's Summary Judgment Motion

 Plaintiff argues that the Accidental Death Policy and the Summary Plan Description disagree regarding when insurance ends. The Accidental Death Policy provides that insurance will cease on the earliest of (1) the date insurance for the Insured terminates; or (2) the premium due date that falls on or next follows the date such person "ceases to be an eligible family member as described in Statement 2 of the Application." Accidental Death Policy in Joint Stipulation (Doc. # 19) at AR0094. Under Statement 2 of the Application, plaintiff's spouse was eligible for coverage. See Accidental Death Policy Application in Joint Stipulation (Doc. # 19) at AR0071. By the literal terms of the Accidental Death Policy, insurance on Warren Shields ceased when he ceased to be plaintiff's spouse.

The Summary Plan Description states that "[n]ormally, your dependents' coverage ends when your coverage ends," Summary Plan Description (Exhibit B) in Plaintiff's Motion (Doc. # 16) at SB 18, and that coverage "also ends when your dependent no longer qualifies as a dependent (for example, a child reaches the maximum age or marries)." *Id.* Plaintiff argues that this language contradicts the Accidental Death Policy, that the Summary Plan Description controls, and that regardless of age or marital status, under the Summary Plan Description coverage continues as long as an insured qualifies as a depen-

dent. Plaintiff asserts that she is entitled to summary judgment because Warren Shields remained her dependent and her insurable interest in his life survived their divorce. In the alternative, plaintiff argues that she is entitled to summary judgment because the Summary Plan Description is ambiguous and that any ambiguities should be resolved in her favor. Both arguments are without merit.

As an initial matter, plaintiff seeks summary judgment on the proposition that Warren Shields remained her dependent after their divorce. Plaintiff relies on the definition of "dependent" to mean someone who derives existence, support or direction from another. See Black's Law Dictionary (6th ed.1990). Plaintiff contends that Warren Shields was her dependent because (1) they lived together and shared expenses, use of the family vehicle and child-rearing responsibilities; (2) Warren Shields held various temporary jobs working less than 30 hours a week; and (3) Warren Shields did not maintain health insurance or similar benefits. The record contains evidence that Shields lived with plaintiff and worked as a freight clerk for Labor Ready, but plaintiff's record citations do not otherwise support plaintiff's allegations.

The Summary Plan Description, while not specifically defining the term "dependent," states that dependents eligible for coverage are (1) a legal spouse; (2) an unmarried child between the ages of three and nineteen; and (3) an unmarried child who is attending an educational institution full-time and is between the ages of 19 and 25. Summary Plan Description (Exhibit B) in Plaintiff's Motion (Doc. # 16) at SB 11. At the time of his death, Warren Shields was not plaintiff's legal spouse or her unmarried child. For these reasons, summary judgment for plaintiff is not appropriate on this issue.[7]

---

7. Because plaintiff has not shown that Warren Shields was her dependent, she cannot

prevail on this argument. In analyzing defen-

In the alternative, plaintiff argues that the Summary Plan Description language is ambiguous as to who is a dependent and when coverage ends, and that any ambiguities should be resolved in her favor. Plaintiff contends that the Summary Plan Description implies that as long as a person still qualifies as a dependent, he can be insured. In support of this proposition, plaintiff cites language from the Summary Plan Description which states that dependents eligible for coverage include "unmarried children from age 19 up to the end of the calendar month in which they reach age 25, if they attend an educational institution full-time and are financially dependent on you for support." Summary Plan Description in Plaintiff's Motion (Doc. # 16) at SB 11. Like plaintiff's other ambiguity arguments, this argument can be summarily rejected, even under a de novo standard of review. As a matter of law, the language of the Summary Plan Description is not ambiguous on Warren Shields' eligibility for insurance. The language which is allegedly ambiguous does not address the subject of former spouses or even indirectly suggest that they remain eligible for coverage if they are financially dependent.[8]

Plaintiff relies on *Lewis v. Cox Enter., Inc.*, No. 94–2792, 1995 WL 321754, at *4 (E.D.La. May 24, 1995), to support her claim that the term "dependent" is ambiguous and can include ex-spouses. *Lewis*, however, is distinguishable. There, company representatives told plaintiff that he could maintain coverage for his ex-spouse and continued to deduct premiums for her insurance. Upon this factual backdrop,

the court found that the term "dependent" was ambiguous—as shown by the fact that even the company representatives were unaware that an ex-spouse was excluded from its definition.

Plaintiff also relies on the fact that the Summary Plan Description for the other life insurance policy states that "[d]ependent coverage ends when ... [y]our spouse ceases to be your lawful spouse." Summary Plan Description (Exhibit B) in Plaintiff's Motion (Doc. # 16) at SB 10. Plaintiff argues that defendants' failure to include this language in the Summary Plan Description for the Accidental Death Policy means that dependent coverage for a spouse continued, after divorce. Although the Accidental Death Policy did not include this language, such language was not necessary to clearly communicate its intent to exclude coverage for former spouses.

In conclusion, plaintiff has not established as a matter of law that Warren Shields was her "dependent" under the Summary Plan Description or the Accidental Death Policy, or that financially dependent former spouses were entitled to coverage in any event. Plaintiff's motion for summary judgment is therefore overruled.

## B. Defendants' Motion For Summary Judgment

Defendants assert that they are entitled to summary judgment because the Plan administrator's decision to deny coverage was not arbitrary and capricious. Plaintiff responds that the Summary Plan Description is ambiguous, in that it does not specifically exclude former spouses from cov-

---

dants' summary judgment motion, however, the Court addresses her argument that the terms of the Summary Plan Description imply that any dependent could retain coverage.

**8.** Plaintiff could just as sensibly argue that former spouses are covered if they are between 19 and 25 years of age, or are full-time

students. She does not make this argument, since Warren Shields presumably does not meet either condition. She also offers no theory how this language would extend coverage to former spouses who are financially dependent but are outside the stated age ranges and are not full-time students.

erage, and that she is entitled to proceed to trial to determine coverage.

Defendants' motion relies upon the Accidental Death Policy and Statement 2 of the Application, which provides in relevant part that "the spouse" of an insured employee is eligible for insurance under the policy. Accidental Death Policy Application in Joint Stipulation (Doc. # 19) at AR0106. Defendants also cite the Accidental Death Policy which provides in relevant part that insurance will cease on "the premium due date that falls on or next follows the date such person ceases to be an eligible family member as described in Statement 2 of the Application," i.e. "the spouse" of an insured employee. Accidental Death Policy in Joint Stipulation (Doc. # 19) at AR0094. Under a simple reading of the policy language, Warren Shields ceased to be an eligible family member when he and plaintiff divorced. His coverage ended on the premium due date following the divorce, and plaintiff is not entitled to benefits under the policy.

■■ Plaintiff contends that the Summary Plan Description is ambiguous on the question whether coverage may be maintained on a former spouse and when coverage for a dependent spouse ends. This contention is exclusively based on Summary Plan Description language which states that coverage "also" ends "when your dependent no longer qualifies as a dependent (for example, a child reaches the maximum age or marries)," Summary Plan Description (Exhibit B) in Plaintiff's Motion (Doc. # 16) at SB 18, and the fact that the summary description for the other life insurance policy states that "[d]ependent coverage ends when ... [y]our spouse ceases to be your lawful spouse," Summary Plan Description (Exhibit B) in Plaintiff's Motion (Doc. # 16) at SB 10. Because the Summary Plan Description for the Accidental Death Policy does not expressly state that spousal coverage ter-

minated after a divorce, plaintiff claims that it is ambiguous and that she is therefore entitled to benefits. She apparently asserts that the silence of the Summary Plan Description speaks for the Accidental Death Policy louder than the words of the policy itself. See *Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1515 (10th Cir.1996) ("Because the [summary plan description] best reflects the expectations of the parties to the plan, the terms of the SPD control the terms of the plan itself."); see also *Scherer v. GE Capital,* No. 99–2166, 2000 WL 875901, at *4 (D.Kan. June 21, 2000) (terms of summary plan description can be relied on to reflect terms of the plan itself). As defendants point out, however, "a summary plan description which is silent on a specific term or issue cannot prevail over the master plan document." *Charter Canyon Treatment Ctr. v. Pool Co.,* 153 F.3d 1132, 1136 (10th Cir.1998). If a summary plan's language can trump language contained in the master plan documents in the event of a conflict, the documents must actually conflict. If the plan documents do not conflict, the important policy of protecting beneficiaries from misleading or false information contained in a summary plan description is not implicated. *Id.* Based on this rule, the language in the Accidental Death Policy controls. At the time of his death, as a matter of law, Warren Shields did not qualify for coverage.

Even looking only to the Summary Plan Description, the administrator's decision to deny benefits is not arbitrary or capricious. In interpreting the terms of an ERISA plan, the Court examines the plan documents as a whole and, if they are unambiguous, construes them as a matter of law. See *Chiles,* 95 F.3d at 1511 (citing *Kemmerer v. ICI Americas Inc.,* 70 F.3d 281, 288–89 (3d Cir.1995)). The Summary Plan Description states that dependents who are eligible for coverage include "your

legal spouse." Even under a de novo standard of review, the Court finds this language to be unambiguous. While the Summary Plan Description could have been more explicit as to the termination of coverage, nothing in its language suggests that coverage continues after the "legal spouse" status is terminated.

The Plan administrator's decision to read the Summary Plan Description as a whole, and to rely on the express language of the policy itself, was not arbitrary and capricious. Plaintiff has not shown any interpretation of these documents which would reasonably support her claim and create a genuine issue of material fact. For these reasons, defendants are entitled to summary judgment.

**IT IS THEREFORE ORDERED** that defendants' Motion To Strike Plaintiff's Sur–Reply Brief (Doc. # 31) filed April 25, 2002 be and hereby is **SUSTAINED.** The Court will disregard Plaintiff's Response To "Defendant's Reply To Plaintiff's Brief Opposing Defendant's Motion For Summary Judgment" (Doc. # 30) filed April 15, 2002.

**IT IS FURTHER ORDERED** that Plaintiff Charity R. Shields' Motion And Memorandum In Support Of Summary Judgment (Doc. # 16) filed February 4, 2002 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that defendants' Motion For Summary Judgment (Doc. # 17) filed February 6, 2002 be and hereby is **SUSTAINED.**