**Carolyn BAKER, Plaintiff,**

v.

**TOMKINS INDUSTRIES, INC. and Ruskin Health Care Plan, Defendants.**

**No. CIV.A. 03–2434–KHV.**

United States District Court, D. Kansas.

Oct. 7, 2004.

195–96 (3d Cir.1998) (holding that inevitable discovery doctrine applies to physical evidence, not statements).

Jennifer L. Benedict, Mary C. O'Connell, Douthit, Frets, Rouse & Gentile, L.L.C., Kansas City, MO, for Plaintiff.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Carolyn Baker brings suit against Tomkins Industries, Inc. ("Tomkins") and Ruskin Health Care Plan ("the Plan"), alleging that they violated 29 U.S.C. § 1133 of the Employee Retirement Security Act of 1974 ("ERISA"), based on their denial of health insurance benefits for a cochlear implant. This matter comes before the Court on *Defendants Tomkins Industries, Inc. And Ruskin Health Care Plan's Motion For Summary Judgment* (Doc. #34) and *Plaintiff Carolyn Baker's Motion For* *Summary Judgment* (Doc. #37), both filed July 2, 2004, and *Defendants Tomkins Industries, Inc. And Ruskin Health Care Plan's Motion To Strike* (Doc. #40) filed July 19, 2004. For reasons stated below, the Court sustains plaintiff's motion for summary judgment and overrules defendants' motion for summary judgment. The Court also overrules defendants' motion to strike.

## *Procedural Issues*

### I. Standard of Review

 Before addressing the parties' arguments, the Court analyzes the appropriate standard of review under ERISA. "A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When a plan grants discretionary authority to determine eligibility for benefits or construe plan terms, a reviewing court applies an arbitrary and capricious standard to the administrator's actions. *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1097 (10th Cir. 1999).

 In this case, the Plan granted the Plan Administrator discretion to construe Plan terms and determine eligibility for benefits. Summary Plan Description ("SPD") at 35, Exhibit A to *Plaintiff's Memorandum In Support Of Motion For Summary Judgment* ("*Plaintiff's Memorandum* ")(Doc. #38) filed July 2, 2004. Plaintiff argues that the Plan Administrator had a conflict of interest, which triggers a less deferential standard of review. *See Chambers v. Family Health Plan Corp.,* 100 F.3d 818, 825 (10th Cir.1996).

Where a conflict of interest exists, the conflict must be weighed as a factor in determining whether the Plan Administrator's decision was arbitrary and capricious.[1] *Firestone,* 489 U.S. at 115, 109 S.Ct. 948; *Chambers,* 100 F.3d at 826–27. "[T]he arbitrary and capricious standard is sufficiently flexible to allow the court to adjust for the circumstances alleged, such as [administrator] bias in favor of a third-party or self-dealing by the [administrator]." *Id.* at 827 (quoting *Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 895 (10th Cir.1988)). Because this Court concludes that defendants' denial of coverage is arbitrary and capricious without regard to the conflict, however, it does not analyze the nature or severity of the alleged conflict.

Plaintiff and defendants have filed cross motions for summary judgment. Several courts have held that traditional summary judgment motions are "improper vehicles for resolving ERISA suits under an arbitrary and capricious standard." *Caldwell v. Life ins. Co. of N. Am.,* 37 F.Supp.2d 1254, 1257 (D.Kan.1998), *rev'd on other grounds,* 287 F.3d 1276 (10th Cir.2002); *see also Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1579–80 (10th Cir. 1994) (motion for summary judgment inconsistent with standards for judicial review of agency action); *Clausen v. Standard Ins. Co.,* 961 F.Supp. 1446, 1455 (D.Colo.1997). The Court would find in favor of plaintiff under a summary judg-

ment methodology or a judicial review of the ERISA action. Therefore it need not decide which precise approach is appropriate.

## II. Scope of Review

█ Defendants ask the Court to strike portions of plaintiff's memorandum in support of her motion for summary judgment and supporting exhibits. Defendants complain that plaintiff relies on materials outside the administrative record.[2] "In reviewing decisions of plan administrators under the arbitrary and capricious standard, the reviewing court may consider only the evidence that the administrators themselves considered on or before the final decision denying benefits." *Kimber,* 196 F.3d at 1098; *Chambers,* 100 F.3d at 823, 824.

Courts have considered evidence outside the administrative record for limited purposes. In *Tremain v. Bell Industries, Inc.,* the Ninth Circuit considered evidence outside the record to determine whether a conflict of interest existed:

> [W]hether the plan administrator's conflict of interest affected its decision to deny her benefits ... is a threshold issue which must be decided before a court can determine what standard of review to apply to a plan administrator's benefits decision.... Thus, such evidence may be considered to determine if

1. The Third Circuit has recognized that while an employer who both funds and administers the Plan may have a conflict of interest, the employer has some incentive "to avoid the loss of morale and higher wage demands that could result from denials of benefits." *Smathers v. Multi–Tool, Inc.,* 298 F.3d 191, 197 (3d Cir.2002) (quoting *Nazay v. Miller,* 949 F.2d 1323, 1335 (3d Cir.1991)). The Tenth Circuit has found that "the mere fact that the plan administrator was a [company] employee is not enough *per se* to demonstrate

a conflict." *Fought v. Unum Life Ins. Co.,* 379 F.3d 997, 1005 (10th Cir.2004).

2. Specifically, defendants object to the following documents: Telephone Depositions of David G. Wolff, Janet P. Miller, Rodney Dhone and Neena Montgomery; WISDOM Utilization Management System Patient Notes for Carolyn Baker; copies of plaintiff's medical bills; and UMR "Explanation of Benefits" pages.

a plan administrator's decision was affected by its conflict of interest. 196 F.3d 970, 977 (9th Cir.1999). Because the Plan Administrator's decision was arbitrary and capricious without reference to Tomkin's conflict of interest, this Court does not consider evidence outside the administrative record.

 Courts have also held that while additional evidence may not be introduced on the merits of a claim, a party can bring in evidence on the compilation of the record or evidence "on the narrow issue of the manner in which defendant made its decision, so that the court may determine whether defendant acted arbitrarily in making that decision." *Buchanan v. Reliance Standard Life Ins. Co.*, 5 F.Supp.2d 1172, 1181 (D.Kan.1998) (court could review depositions to extent they bear on procedure by which defendant reached decision); *Caldwell v. Life Ins. Co. of N. Am.*, 165 F.R.D. 633, 637 (D.Kan.1996) (court permitted depositions to determine whether defendant developed complete record). Here, defendants included an affidavit which was not part of the record reviewed by the Plan Administrator but which directly sheds light on the manner in which the Plan Administrator reached

its decision.[3] The Court will consider this document for the limited purpose of reviewing the manner in which the Plan Administrator made its decision.

### Factual Background

In reviewing the defendants' decision, the Court relies on the following facts.

Ruskin, a wholly-owned subsidiary of Tomkins, employed plaintiff's husband. Tomkins provides health care coverage to Ruskin employees through a self-funded health care plan. Tomkins serves as Plan Administrator for the Plan. The Plan grants Tomkins, as Plan Administrator, discretion to construe its terms and determine eligibility for benefits.[4]

United Medical Resources ("UMR") serves as claims manager and third-party administrator of the Plan. UMR makes initial benefit determinations and pays claims. Appeals are decided by a three-member appeals committee, which includes of one employee from Ruskin and two from Tomkins.

Plaintiff was a qualified participant in the Plan. In March of 2000, she received treatment for strep, pneumonia, meningitis and encephalitis and suffered complete

---

**3.** *See* Exhibit A to *Defendants Tomkins Industries, Inc. And Ruskin Health Care Plan's Memorandum In Support Of Their Motion For Summary Judgment* ("*Defendants' Memorandum* ")(Doc. # 35) filed July 2, 2004, Affidavit of David G. Wolff. Plaintiff did not file a motion to strike but did object to the inclusion of the affidavit as part of the administrative record.

**4.** The Summary Plan Description ("SPD") states:

[T]he PLAN ADMINISTRATOR'S power includes, but is not limited to, the power and authority, at its own discretion, to:

(1) Make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of this PLAN or to comply with any applicable law;

(2) Construe the terms of the PLAN;

(3) Decide issues arising under the PLAN including the eligibility of any person to participate in the PLAN or qualify as a COVERED INDIVIDUAL; and

(4) Determine if a judgement [sic], decree or order (including approval of a domestic relations settlement agreement) is a QUALIFIED MEDICAL CHILD SUPPORT ORDER and to do whatever is necessary to discharge the PLAN'S obligations with respect to such QUALIFIED MEDICAL CHILD SUPPORT ORDERS.

Summary Plan Description ("SPD") at 35, Exhibit A to *Plaintiff's Memorandum* (Doc. # 38).

loss of hearing in both ears. To help restore plaintiff's hearing, her physician recommended surgery to place a cochlear implant in her left ear.[5] Prior to the surgery, plaintiff requested coverage.

Under the Plan, "Eligible Expenses" include:

Purchase and fitting (but excluding adjustments, repairs and replacements) of a prosthetic appliance that is limited to a medical purpose and is able to withstand repeated use; provided that the appliance replaces all or part of a missing body part and its adjoining tissue or the function of a permanently useless or malfunctioning body part. Prosthetic appliances include the first lenses following cataract surgery and the first breast prostheses and surgical brassiere following a mastectomy.

SPD at 21. *Except as expressly provided in the Plan,* the Plan excludes coverage for "body implants of artificial or mechanical devices designed to replace human organs; or for any prosthetic device, including the replacement or repair of any prosthetic device." *Id.* at 26. The Plan further provides that no benefits are payable for charges that are not medically necessary. Under the Plan, "medically necessary" services are services "considered necessary to the amelioration of sickness or injury by generally accepted medical practice in the local community." *Id.* at 47. In addition to medical necessity, the Plan sets forth nine conditions for covered services. They must:

(1) Be legal;

(2) Be ordered by a PHYSICIAN;

(3) Be safe and effective in treating the condition for which ordered;

(4) Be part of a course of treatment which is generally accepted by the American medical community, including all branches of professional societies and governmental agencies;

(5) Be of the proper quantity, frequency and duration for treatment of the condition for which ordered;

(6) Not be redundant when combined with other services and supplies that are used to treat the condition for which ordered;

(7) Not be EXPERIMENTAL/INVESTIGATIVE;

(8) Not be maintenance therapy or treatment; and

(9) Be for the purpose of restoring health and extending life.

*Id.* The Plan Administrator retains authority to determine whether a service is medically necessary.

On September 20, 2000, UMR denied plaintiff's request for coverage because of a "Plan Exclusion" which it did not identify. On October 10, 2000, plaintiff appealed. On October 19, 2000, Lisa Farfsing, a benefits administrator for UMR, sent Marta Hayes[6] an e-mail asking whether UMR had denied the claim just based on "plan exclusion" or whether UMR had also determined medical necessity. Hayes re-

---

**5.** A cochlear implant is "an electronic instrument, part of which is implanted surgically to stimulate auditory nerve fibers, and part of which is worn or carried by the individual to capture, analyze and code sound.... The purpose of implanting the device is to provide an awareness and identification of sounds and to facilitate communication for persons who are profoundly hearing impaired." Administrative Record ("A.R.") at 50, Exhibit A–1 to

*Defendants' Memorandum* (Doc. # 35) filed July 2, 2004. Materials also describe a cochlear implant as "an electronic prostheses implanted in the inner ear that partially performs the functions of the cochlea." *Id.* at 33, Article by Bonnie Poitras Tucker.

**6.** The administrative record does not reflect Hayes' position or job title.

sponded that the "procedure is appropriate and medical [sic] necessary" but that the Plan excluded the implant and related services. Administrative Record ("A.R.") at 28, Exhibit A–1 to *Defendants Tomkins Industries, Inc. And Ruskin Health Care Plan's Memorandum In Support Of Their Motion For Summary Judgment* (Doc. # 35) filed July 2, 2004. Dr. Watanabe, Medical Director at UMR, also concluded that plaintiff's cochlear implant met the criteria for medical necessity. *Id.* at 26.

On November 17, 2000, UMR forwarded plaintiff's appeals packet to Tomkins.[7] In the transmittal letter, Farfsing noted that "the predetermination for the cochlear implant was reviewed by the Health Management Services Department of UMR and was considered appropriate and medically necessary, but was denied due to a Plan exclusion." *Id.* at 19.

The appeals packet contained numerous documents, including letters and articles submitted by plaintiff's physicians;[8] correspondence from UMR, Tomkins employees and plaintiff's husband; UMR Claim Review notes; and memoranda. The packet also included three pages from the Ruskin Health Care Plan Summary Plan Description and a chart labeled "Tomkins Industries, Inc., UMR Standard Inclusions and Exclusions." In the "Excluded" column, the chart contains an "x" next to cochlear implants. The words "Tomkin Union Plan TK01IH" and a date, January 1, 1998 are located at the bottom of the page. The page is numbered "34."

■ On November 27, 2000, Neena Montgomery, Tomkins Benefits Supervisor, sent a memorandum to the appeals committee asking for review of the claim. Montgomery stated "[p]lease review the attached letter of appeal. Employee is requesting coverage for a cochlear implant, a non-covered service under the plan, for his spouse. Please advise your opinion on this exception request and the basis for your determination." *Id.* at 18. Three days later, Janet Miller, an appeals committee member, responded:

> I think we should pay for this procedure.
>
> After reading the information included with the appeal, I firmly believe that the cochlear implant should be deemed a prosthetic device and therefore be covered under the plan. The implant is similar to a pacemaker that stimulates the heart. The plan currently covers prosthetic devices that are medically necessary.
>
> There is a clear medical necessity, based on the letters from the member and the doctors caring for Ms. Baker. The meningitis left her deaf. This device will replace that which was damaged by illness.
>
> This device and procedure are covered by many other insurance carriers and governmental agencies. It is time we

---

7. The administrative record consists of the appeals packet, UMR's initial denial letter and the SPD. The appeals packet contains eleven pages in dispute. Plaintiff objects to the inclusion of these pages, claiming that defendants added the pages to the record after her appeal. These pages include definitions from unidentified medical dictionaries, a fax cover sheet, and one page containing two definitions cited from Taber's Cyclopedic Medical Dictionary. All pages have fax dates of August 7, 2001, in the top left corner. The Court finds that the inclusion of the pages has no impact on the ultimate outcome of the case.

8. Plaintiff's treating physician, Dr. Charles Luetje, submitted articles on insurance coverage and disability discrimination issues, cost-utility of implants, and a policy statement from the American Academy of Otolaryngology.

take it off the forbidden and/or experimental list and allow it under the plan. *Id.* at 4.[9]

The appeals committee (which consisted of Miller, Rod Dhone, and David Wolff) met on December 11, 2000, and decided to deny coverage. Dhone documented his conclusion in an e-mail to Montgomery, stating "I elect to deny coverage for the Cochlear Implant. The SPD is very specific concerning the coverage for this type of treatment/procedure." Miller changed her mind after her first e-mail and sent a second e-mail which stated, "[d]eny coverage for this procedure. This is specifically excluded from coverage under the SPD. The plan specifically excludes hearing aids, devices or cochlear implants from coverage, regardless of medical necessity. I do not see any reason to change or amend the plan to allow the exception." *Id.* at 5. That same day, Wolff sent Montgomery a memorandum which stated that the appeals committee had read and examined the literature and notes in the appeals packet, and noted as follows: "This specific procedure is excluded from coverage under the specific terms of the SPD (dated 1–1–98, Ruskin).... the SPD specifically excludes the treatment for which coverage is requested. There is no coverage without making a specific exception to the Plan language." *Id.* at 3. In their individual responses to Montgomery, all members stated that the Plan excluded cochlear implants; none of them commented on medical necessity.[10]

Three days after the appeals committee meeting, Tomkins informed plaintiff that coverage was denied. The denial letter stated that the implant was not medically necessary because "[t]he Plan Administrator has found the cochlear implant is not for the purpose of restoring health and specifically extending life, as detailed under the Plan," and that "the Plan specifically excluded the cochlear surgery under the exclusion 'for body implants of artificial or mechanical devices designed to replace human organs.'" *Id.* at 1. Tomkins also noted that "[t]he cochlear implant device is designed to do what this exclusion describes." *Id.*

Plaintiff has exhausted her administrative remedies.

Plaintiff and defendants have filed cross motions for summary judgment. Plaintiff argues that she is entitled to summary judgment because (1) defendants failed to comply with procedural notification requirements which are designed to ensure a full and fair review of her ERISA claims; and (2) defendants' denial of coverage was arbitrary and capricious. Defendants argue that they are entitled to summary judgment because the Plan Administrator reasonably concluded that (1) the cochlear implant was not "medically necessary" and (2) the body implant exclusion precluded coverage for cochlear implants.

### *Analysis*

◼ The Plan Administrator concluded that plaintiff's cochlear implant was not medically necessary and that it was ex-

---

9. Defendant argues that this e-mail is "irrelevant" because Miller's final vote was to deny coverage and that even if she had voted to provide coverage, her vote would be a minority vote and would not have changed the outcome. This e-mail is relevant, however, as to whether the appeals committee evaluated the Plan's "medically necessary" criteria.

10. Wolff later stated that the appeals committee deliberated "over the issue of 'medically necessary,' as that term is defined in the plan, and found the device to be not medically necessary." Exhibit A to *Defendants' Memorandum* (Doc. # 35), Affidavit of David G. Wolff.

pressly excluded by the Plan.[11] Plaintiff claims that she is entitled to summary judgment because (1) by not complying with ERISA notification requirements, defendants deprived her full and fair review of her claim, and (2) defendants' decision to deny coverage was not based on a reasonable interpretation of the Plan or substantial evidence.

## I. ERISA Procedural Requirements

Plaintiff asserts that defendants did not meet the notification requirements of ERISA and the Plan, and that they thus deprived her of a full and fair review of her claim. Plaintiff argues that the initial denial letter of September 20, 2000, did not set forth the specific reasons for denial or refer to any specific plan provision. Plaintiff also contends that the denial letter of December 14, 2000, did not set forth the specific reasons for denial or specify what materials the appeals committee had reviewed.

■■■ ERISA provides that benefit plans shall

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

11. In the appeals process and the pleadings, the parties based their arguments on the SPD rather than the actual Plan. The actual Plan has not been included as part of the administrative record. Neither party claims that a

29 U.S.C. § 1133. The regulations provide that notification to the claimant shall set forth

(1) The specific reason or reasons for the adverse determination; (2) Reference to the specific plan provisions on which the determination is based; (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary; (4) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 C.F.R. § 2560.503–1(g).[12] The regulation is designed "to afford the beneficiary and the courts a sufficiently precise understanding of the ground for the denial to permit a realistic possibility of review, even under a deferential standard." *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 694 (7th Cir.1992).

■■■ The denial letter must "set out in opinion form the rationale supporting [its] decision" so that a claimant may "adequately prepare himself for any further administrative review, as well as an appeal to the federal courts." *Richardson v. Central States, S.E. & S.W. Areas Pension Fund,* 645 F.2d 660, 665 (8th Cir.1981); *see also Skretvedt v. E.I. DuPont de Nemours & Co.,* 268 F.3d 167, 178 n. 8 (3d Cir.2001) (quoting *DuMond v. Centex Corp.,* 172 F.3d 618, 622 (8th Cir.1999)); *Halpin,* 962 F.2d at 689. Substantial compliance with procedural requirements will satisfy ERISA, provided the claimant has

material difference exists between the SPD and the actual Plan.

12. The claims procedures set forth in the Plan contain similar requirements. SPD at 39–40.

an opportunity for full and fair review. *See Sage,* 845 F.2d at 895. A full and fair review means "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Id.* (quoting *Grossmuller v. Int'l Union, United Auto., Aerospace & Agric., Implement Workers of Am. UAW, Local 813,* 715 F.2d 853, 858 n. 5 (3d Cir.1983)).

Upon review, the Court finds that Tomkins did not substantially comply with procedural requirements of ERISA and that it thus deprived plaintiff of an opportunity for full and fair review. The UMR letter of September 20, 2000, provided only a general reason for denial, *i.e.* "Plan Exclusion," and did not refer to the applicable provisions of the Plan as required by ERISA. UMR did not provide any information that would assist plaintiff in perfecting her claim. The initial letter therefore failed to meet the first three ERISA notification requirements in 29 C.F.R. § 2560.503–1(g). *See Donato v. Metro. Life Ins. Co.,* 19 F.3d 375, 382 (7th Cir. 1994).

Defendants argue that the denial letter of December 14, 2000 satisfied ERISA because it cited Plan documents and provided a rationale for the denial. The letter did meet three of the four requirements, but it still falls short of substantial compliance with the fourth requirement. In the letter, Tomkins provided two specific reasons for denial: (1) the Plan excluded treatment for body implants "designed to replace human organs" and "[t]he cochlear implant device is designed to do what this exclusion describes;" and (2) the cochlear

implant did "not meet the definition of medical necessity" because it was "not for the purpose of restoring health and specifically extending life, as detailed under the Plan." A.R. at 2. The letter also pointed to specific Plan provisions on which Tomkins based its decision. Nevertheless, the letter did not provide plaintiff any necessary information as to what would assist in perfecting her claim.

Defendants argue that plaintiff's appeal did in fact include additional materials, which the Appeals Committee reviewed.[13] Defendants fail to consider that had plaintiff been given the required information about what would assist in perfecting her claim, she would have had the opportunity to submit materials more directly related to the purported reasons for denial. Moreover, Tomkins added a new reason for denial, lack of medical necessity, after plaintiff exhausted her administrative appeals. *See Doyle v. Nationwide Ins. Companies,* 240 F.Supp.2d 328, 344 (E.D.Pa. 2003) (delayed explanation comes too late to serve plaintiff's right to clarify application during administrative appeal); *see also Schleibaum v. Kmart Corp.,* 153 F.3d 496, 500 (7th Cir.1998) (claimant must have all necessary information at time when claimant still has meaningful opportunity for appeal and full and fair review). The Court therefore finds that defendants violated ERISA notification requirements.

▮ A procedural defect, however, does not automatically disturb the decision of the Plan Administrator. *See Sage,* 845 F.2d at 895. When an ERISA violation is found, the remedy is to remand the case to the administrator unless the evidence "clearly shows that the administrator's actions were arbitrary and capricious" or

---

**13.** The administrative record reflects that plaintiff's physician, rather than plaintiff, submitted the additional information.

"the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1288–89 (10th Cir. 2002) (citations omitted).

The parties here do not seek remand. They have sufficiently developed the factual record, and the Court reviews the evidence to determine whether the Plan Administrator's decision to deny coverage was arbitrary and capricious. *Id.*

## II. Defendants' Decision To Deny Coverage

█ Defendants eventually denied coverage under the Plan on the grounds that (1) the procedure was not medically necessary and (2) the body implant exclusion excludes coverage for cochlear implants. Plaintiff maintains that her cochlear implant surgery satisfied the Plan definition of "medically necessary" and that cochlear implants do not fall within any Plan exclusion.

█ The Court reviews the administrative record to determine whether substantial evidence supports defendants' decision. *See Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 380 (10th Cir.1992). "Substantial evidence is such evidence that a reasonable mind would accept as adequate to support the conclusion reached by the administrator. It is more than a scintilla and less than a preponderance." *Johnson v. Dayco Prods., Inc.,* 973 F.Supp. 1255, 1262 (D.Kan.1997) (quoting *Sandoval,* 967 F.2d at 382). The Tenth Circuit has further defined the arbitrary and capricious standard as follows:

When reviewing under the arbitrary and capricious standard, the Administrator's

decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within his knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis. The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end.

*Kimber,* 196 F.3d at 1098. As stated in *Kimber,* "[d]eferential review does not involve a construction of the terms of the plan; it involves a more abstract inquiry—the construction of someone else's construction." *Id.* at 1100 (quoting *Morton v. Smith,* 91 F.3d 867, 871 n. 1 (7th Cir.1996) (citations omitted)). Accordingly, the Court is limited to the question whether defendants' construction of the Plan was a reasonable one.

The Plan authorizes the Plan Administrator "to determine whether a service or supply is MEDICALLY NECESSARY" and provides that the Plan Administrator may consider the findings and assessments of"(1) National medical associations, societies, and organizations; (2) The United States Food and Drug Administration; (3) The CARE MANAGER; and (4) The COMPANY'S medical and legal advisors." SPD at 47. Defendants argue that the cochlear implant was not medically necessary because it was not "for the purpose of restoring health and extending life," as required by the SPD. *Id.* Plaintiff responds that the UMR Medical Director, Dr. Watanabe, expressly stated that the procedure met the criteria for "medically necessary." [14] A.R. at 26. Defendants argue that Dr. Watanabe did not have the Plan language defining "medically neces-

---

14. Plaintiff also cites case management notes that are outside the administrative record.

The Court does not consider these notes.

sary" and did not opine whether the cochlear implant met the Plan definition, and that his opinion offers little guidance.

Defendants offer no explanation why the medical director of the third-party administrator would not know the Plan language and definitions. Indeed, defendants' failure to provide that information to Dr. Watanabe suggests arbitrary and capricious conduct aside from the merits of the decision. Furthermore, defendants cite no evidence which contradicts Dr. Watanabe's statement that plaintiff's cochlear implant met the criteria for "medical necessity." At least three persons associated with the Plan, including one member of the appeals committee, acknowledged that plaintiff's cochlear implant was medically necessary.[15] In its final denial letter, Tomkins basically invented a finding that the cochlear implant was not medically necessary because it was not "for the purpose of restoring health and specifically extending life, as detailed under the Plan." [16] *Id.* at 1. Tomkins further concluded that "[w]hile cochlear implants undeniably enhance the quality of one's life, they do not meet the definition of 'medical necessity' under the Plan." *Id.* at 2.

With their emphasis on "extending life," defendants would apparently limit Plan coverage to life-threatening conditions and treatments which are specifically designed to increase length of life. Such an interpretation is patently unreasonable, however, in light of other Plan provisions. Among other things, the Plan expressly covers occupational therapy, lenses following cataract surgery and breast prostheses after a mastectomy. SPD at 21, 23. These services do not specifically extend life, but rather enhance the quality of life. Under defendants' reasoning, these admittedly "eligible expenses" would not be covered. The Plan also expressly covers allergy testing and treatment for mental illness and substance abuse services which only infrequently "extend life." Defendants' literal interpretation of the phrase "extending life" renders meaningless the Plan's purported coverage of certain expenses. Whatever the meaning of the Plan requirement that all services be "for the purpose of restoring health and extending life," such a condition should not be arbitrarily interpreted in a manner that necessarily excludes numerous services that are specifically identified as "eligible expenses." In denying coverage for plaintiff's cochlear implant, defendants have relied on a standard of of "medical necessity" which is arbitrary and capricious.

15. On October 20, 2000, Hayes noted that plaintiff's cochlear implant was "appropriate and medically necessary." A.R. at 28. Farfsing noted that after review, the Health Management Services Department of UMR considered plaintiff's cochlear implant "appropriate and medically necessary." *Id.* at 19. Finally, Miller noted that the cochlear implant was "a clear medical necessity, based on the letters from the member and the doctors caring for Ms. Baker." *Id.* at 4. Miller later voted to deny coverage based on a "plan exclusion" but she did not indicate that she changed her determination that the cochlear implant was medically necessary. *Id.* at 5.

16. Wolff, a member of the appeals committee, stated that the committee reviewed all of the literature provided, but he does not explain whether the committee reviewed any literature in deciding that the implant was not medically necessary. *Id.* at 3. In his affidavit, Wolff states that the appeals committee deliberated "over the issue of 'medically necessary,' as that term is defined in the plan, and found the device to be not medically necessary." Exhibit A to *Defendants Memorandum* (Doc. # 35), Affidavit of David G. Wolff. Defendants do not attempt to reconcile this affidavit with the e-mail of another appeals committee member (Miller) which states that the letters from plaintiff's husband and doctors established "clear medical necessity."

■ In the alternative, defendants maintain that the Plan expressly excludes cochlear implants. In particular, defendants rely on the exclusion "for body implants of artificial or mechanical devices designed to replace human organs."[17] *Id.* at 21. In the final denial letter, defendants asserted that "[t]he cochlear implant device is designed to do what this exclusion describes." A.R. at 1. Defendants further asserted that a cochlear implant "*partially*" performs the functions of the cochlea." *Defendants Tomkins Industries, Inc. And Ruskin Health Care Plan's Motion For Summary Judgment ("Defendants' Motion")* (Doc. # 34) at ¶ 26 (citing A.R. at 33) (emphasis added).

Defendants do not explain how a cochlear implant replaces a human organ. The cochlea is one part of an ear, and the body implant exclusion excludes devices that *replace* human organs. Even if an ear is an organ, a cochlear implant does not replace an ear. Additionally, defendants note that a cochlear implant aids the functioning of an ear by stimulating auditory nerve fibers. *See id.* (citing A.R. at 34). In this regard, a cochlear implant is similar to a pacemaker for a heart, which the Plan covers. *See id.* at 4, 34. For these reasons, the first clause of the body implant exclusion does not support defen-

dants' decision to deny coverage for plaintiff's cochlear implant.[18]

■ The Court finds that cochlear implants are "Eligible Expenses" under the Plan. The Plan provides coverage for "other services," including:

> Purchase and fitting (but excluding adjustments, repairs and replacements) of a prosthetic appliance that is limited to a medical purpose and is able to withstand repeated use; provided that the appliance replaces all or part of a missing body part and its adjoining tissue or the function of a permanently useless or malfunctioning body part. Prosthetic appliances include the first lenses following cataract surgery and the first breast prostheses and surgical brassiere following a mastectomy.

SPD at 21. Defendants maintain that this provision was intended to apply only to prosthetic appliances such prosthetic limbs.[19] *Defendants' Response* (Doc. # 41) at 20. Defendants cite no authority for their interpretation, and it conflicts with the plain language of the Plan. The Plan expressly covers prosthetic appliances that do not replace limbs such as "the first lenses following cataract surgery and the first breast prostheses and surgical brassiere following a mastectomy." SPD at 21. Therefore, defendants' interpretation of

17. The Plan excludes coverage "for body implants of artificial or mechanical devices designed to replace human organs; or for any prosthetic device, including replacement or repair of any prosthetic device, except as expressly provided in the PLAN." Defendants relied only on the first clause.

18. Throughout the administrative record, defendants state that cochlear implants are specifically excluded by the Plan. A.R. at 3, 4, 6, 26. As best the Court can ascertain, however, defendants have relied on an exclusion from a different plan. In an exhibit labeled "complete appeal," defendants include a chart identified as "UMR Standard Inclusions and

Exclusions," which apparently is from another plan. The chart lists cochlear implants and contains a checkmark underneath the column labeled "Excluded." Defendants do not dispute plaintiff's contention that the chart does not refer to the Plan at issue in this case, and they do not attempt to explain why this chart is included in the administrative record.

19. Defendants do not explain how a prosthetic limb is medically necessary to "restore health" or "extend life," or how it satisfies the criteria for medical necessity to any greater degree than a cochlear implant does.

the Plan is plainly unreasonable. Cochlear implants fall within the ordinary meaning of a prosthetic device designed to replace the functioning of a malfunctioning body part.

For the reasons discussed above, this Court finds the Plan Administrator's denial of coverage was arbitrary and capricious. The Court therefore sustains plaintiff's motion for summary judgment. Defendants' motion for summary judgment on the same issue must be overruled.

**IT IS THEREFORE ORDERED** that *Defendants Tomkins Industries, Inc. And Ruskin Health Care Plan's Motion For Summary Judgment* (Doc. # 34) filed July 2, 2004 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that *Plaintiff Carolyn Baker's Motion For Summary Judgment* (Doc. # 37) filed July 2, 2004 be and hereby is **SUSTAINED**. The Court **REMANDS** the matter to the Plan Administrator for reprocessing of plaintiff's claim in accordance with the views expressed in this opinion.

**IT IS FURTHER ORDERED** that the parties comply with Fed. Rule Civ. P. 54(d) and D. Kan. Rule 54.2 in determining the proper award of costs and expenses.

**IT IS FURTHER ORDERED** that *Defendants Tomkins Industries, Inc. And Ruskin Health Care Plan's Motion To Strike* (Doc. # 40) filed July 19, 2004 be and hereby is **OVERRULED**.